MARY TOWNSEND WOODS ET AL V. AMOS TOWNSEND ET AL.

No. A-753. Decided February 13, 1946.
Rehearing overruled March 13, 1946.
(192 S. W. 2d Series, 884.)

596

*Joe J. Fisher*, of Jasper, and *Looney and Clark* and *Everett L. Looney*, of Austin, for petitioners.

The Court of Civil Appeals erred in holding that there was no evidence to support the jury finding that the testator did not have testamentary capacity when he executed the will in question. Electric Express & Baggage Co. v. Ablon, 110 Texas 235, 218 S. W. 1030; Southern Pac. Ry. Co. v. Walters, 110 Texas 496, 221 S. W. 264; McFall v. Fletcher, 138 Texas 93, 157 S. W. (2d) 131.

*Faver & Barnes*, of Jasper and *Barnes & Barnes*, of Beaumont, for respondents.

The Court of Civil Appeals correctly held that the evidence in this case was insufficient to support the jury findings that deceased lacked testamentary capacity to execute a will and that there was undue influences exercised over him for the execution of the will. Taylor v. Small, 71 S. W. (2d) 895; Pierson v. Pierson, 57 S. W. (2d) 633; Mayes v. Mayes, 159 S. W. 919.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

Claude Townsend and Amos Townsend, respondents, were proponents of the will of William Green Townsend, deceased, probate of which was denied in both trial courts on a contest filed by Mary Townsend Woods et al, petitioners, alleging that the deceased lacked testamentary capacity and was under the undue influence of respondents when he executed the alleged will on August 27, 1942. The district court jury found that William Green Townsend did not have testamentary capacity and that he was acting under the undue influence of Amos Townsend when the instrument was executed.

In opinions ordered not to be published, the court of civil appeals first held that the evidence was insufficient as to both issues and remanded the cause for a new trial. But on rehearing it rendered judgment that the will be admitted to probate, holding that there was *no* evidence of lack of testamentary capacity but making no holding in that respect as to undue influence. We assume, therefore, that its judgment of rendition was based on the following statement in its opinion: "The case was remanded for a new trial in the belief that the facts had not been fully developed on the trial. In the course of the oral argument on the motions for rehearing, however, counsel for appellees stated that the facts on such issues of undue influence and lack of testamentary capacity had been fully developed and that the testimony thereon would not be materially different on another trial."

That raises two questions for our decision, namely, whether there was *any* evidence of the testator's lack of testamentary capacity, and, if so, whether the holding that the evidence was insufficient to support the jury's finding of lack of testamentary capacity and undue influence warranted the court of civil appeals in rendering judgment merely because contestants' counsel stated in argument that the testimony on those issues had been fully developed and would not be materially different on another trial.

The next paragraph is taken verbatim from the opinion of that court in reversing and remanding the cause and is a fair resume of the testimony offered by petitioners:

Fourteen witnesses testified for the contestants of the will, twelve of whom were not interested in the outcome of the law suit, and related a number of specific instances on which they predicated their opinions as lay witnesses that the deceased was

of unsound mind at the time he executed the will. Some of them related instances in regard to influence exercised by Amos Townsend on the deceased. One witness, Paul N. Ashby, had been a merchant at Brookeland, Texas, and Uncle Billy had traded with him. Sometime in 1942 the witness saw the deceased and he testified the deceased was then feeble and did not know the witness. He stated that "it looked like he wasn't normal. His age was 90 some odd years, I can't have my opinion a man of that age would be normal. There was a difference in the way he looked and in his actions when I used to see him in Brookeland." The witness D. E. Willis testified that he had known the deceased many years, that four or five years before the trial he did some notary work for the deceased and Amos Townsend; that he drew up a power of attorney and when "Uncle Billy was asked to sign the paper he made his mark and afterwards asked 'Now what is that for?' " That sometime later he met Uncle Bill and Uncle Bill did not know him, that he was slouchy and was not as neat as he had formerly been. Mr. M. L. Woods testified that he had known the deceased many years, that he noticed a change in him in recent years, that he did not act like he used to, that Uncle Billy didn't recognize him at a grave-yard working. Mr. M. T. Harvard testified that he had known Uncle Bill for about 15 years, that "there was a lots of difference between him in later years and that he acted like a man that didn't have his right mind." That on one occasion he pretended to be talking to his mules while plowing, his clothes were not clean and that on another occasion Uncle Bill didn't recognize him. E. H. Marshall testified that he had known Uncle Bill for many years, saw him the last time in August, 1941, when he served some papers on him, that there was a lot of difference in him; that he was very forgetful and didn't recognize him. Henry Jones testified that he had known Uncle Billy for many years; that he saw him in August, 1942, and noticed a change in him; that Mrs. Jones spoke to him and that he didn't recognize her; that on a later occasion when another man was with him he saw Uncle Bill didn't recognize the other man; that on another occasion while Uncle Bill was down at the witness' house he sat down and helped the women shell peas and let the peas fall on the floor; that he said to one of the women present: "You got the God damnest biggest wild eyes I ever seen in my life." Pratt DuBose testified that he had known Uncle Bill for many years, lived near him, that Uncle Bill used to be a big talker but in 1942 he didn't have much to say and didn't act and look the same. Another witness, Jack Woods, in his testimony related an incident when he was driving Uncle Bill Townsend to Ville Platte, Louisiana, to a doctor. He stated that the old man got out of the car at a small filling station and answered a call of

nature near the car, while two ladies were in the car. Another witness, Mr. S. M. Mosley, stated that he had known Uncle Billy since 1908, and saw him at the cemetery working in August, 1942, and Uncle Billy didn't recognize him; that he wasn't as neatly dressed as he formerly had been and failed to recognize other acquaintances at that time. Lewis Powell testified that he drove the car which took Uncle Bill Townsend and Amos Townsend to Jasper on the day the will was signed; he took them to Dr. Hardy's office and they went later to Mr. Faver's office; that in driving between home and Jasper Uncle Bill stated, "There used to be lots of houses standing here." Witness stated there had not been any houses in that locality. The witness Virgie Ruth Lakey testified that Uncle Billy would look wild out of his eyes, sometimes would go with his clothes unbuttoned, that the day when Uncle Billy Townsend had gone with Amos Townsend to Jasper he came back to her house and at that time he called her husband Lige, which was not the name of her husband but that of her husband's uncle. She further testified that "several weeks after the day the will was signed Amos Townsend, one of the beneficiaries, said to her that 'We got the papers fixed,' I said, 'What papers?' and he said, 'The will to me and Claude but the old man didn't know what he was doing'." J. W. Robbins testified that he was 78 years old and had known Uncle Bill Townsend all his life and that they were good friends; that there was quite a change in him in his last days, he had a wild look out of his eyes and didn't have much to say, that his personal appearance was not good, that he saw him at the cemetary working and that he was very dirty; that he thought Amos influenced him and managed him better than parents manage their children today.

■■ To agree that this testimony was no evidence of lack of testamentary capacity we would have to believe that it furnished no reasonable ground for the jury's conclusion that the deceased lacked that capacity when he executed the will. In other words, we would have to believe that it provided no reasonable basis for opposite conclusions by ordinary minds. Lee v. International & G. N. Ry. Co., 89 Texas, 583, 36 S. W., 63. We are not convinced that the testimony was of that character, therefore we cannot agree with the court of civil appeals that there was no evidence of lack of testamentary capacity. We think there was some.

■ Since the court of civil appeals concluded that there was no evidence on that issue we must assume that it would adhere to its original holding that the testimony on the issue was insufficient, that question having been duly presented by assign-

ment in that court. Wallace v. Southern Oil Co., 91 Texas, 18, 22, 40 S. W., 399. The result is, therefore, that we have what amounts to a holding that the testimony was insufficient on both issues; and to review that decision this court has no jurisdiction. Deen v. Birdville Independent School District, 138 Texas, 339, 159 S. W. (2d) 111. In that situation, however, the proper judgment was to remand the case to the district court for a new trial unless the court of civil appeals was justified in rendering the judgment for respondents on the statement made by counsel for petitioners in arguing their motion for rehearing that the facts on the two issues had been fully developed and that the testimony would not be materially different on another trial.

Choate v. San Antonio & A. P. Ry. was twice before this court, the opinion on the first appeal appearing in 90 Texas, 82, 36 S. W., 247, 37 S. W., 319, and that on the second appearing in 91 Texas, 406, 44 S. W., 69. On the first appeal the court of civil appeals held that the verdict for plaintiff was not sustained by the evidence. After stating, "This being the third trial of the case, both of the former verdicts having been set aside by the judge presumably for want of evidence to sustain them, it must be considered that plaintiff brought before the jury every fact that would tend to maintain his case," the court said, "In the event of another trial, the court should, upon the same testimony, direct a verdict for the defendant." 35 S. W., 180. On original consideration this court affirmed that judgment but on rehearing reversed its holding that there was no evidence, Judge Brown stating, "We think that the evidence is not such as to preclude a difference of opinion upon the question of negligence on the part of the defendant, and that the Court of Civil Appeals erred in the direction that it gave to the trial court," and remanded the case to the trial court without instruction. 90 Texas, 82, 36 S. W., 247, 37 S. W., 319. On the second appeal, after recounting the history of the first, the court of civil appeals said, "On practically the same facts a jury has again returned a verdict for the appellee, and the trial court necessairly refused a new trial, and the case is again before this court. We adhere to the opinion that there is a total lack of testimony to sustain the verdict of the jury. * * We adhere to the opinion that this court has the authority and power to give such orders to lower courts as will terminate useless and protracted litigation; but the Supreme Court has held otherwise, and that holding is the law of this case, and the judgment of the District Court is therefore reversed and remanded, without instructions in case the evidence should be the same on another trial, as it was in this." 43 S. W., 535. The railway company's application

to this court for a writ of error was dismissed, but Chief Justice Gaines wrote wrote an opinion on the point at issue, concluding with these words, "But the difference between the judgment of the Court of Civil Appeals upon the former writ of error and that to which a writ of error is here sought, is that the latter does not direct that a verdict be instructed. It reverses the judgment of the trial court and remands the cause, which it was within the power of the Court of Civil Appeals to do, and which it was their duty to do, provided they were of the opinion that the verdict was against such a preponderance of the evidence as to make that action proper. The cause having been remanded without instructions, upon another trial the jury may upon the same evidence render a verdict either for the plaintiff or the defendant." 91 Texas, 406, 44 S. W., 69.

If on a second appeal, after four trials in the district court which resulted in a verdict for plaintiff "on practically the same facts," as in the Choate case, supra, the court of civil appeals is without power to direct the trial court to instruct a verdict in the event the testimony is the same upon a fifth trial, we perceive no reason for holding it could in a first appeal of this case effect the same result by rendering the cause for respondents because of an opinion expressed by counsel for petitioners in an oral argument that the testimony will not be materially different on another trial.

■ Other points relate to alleged procedural errors. Since they may not occur at another trial, it is unnecessary to decide them, except one point which complains of the holding by the court of civil appeals that certain testimony given by the witness Virgie Ruth Lakey was incompetent.

Miss Lakey, a witness for petitioner, testified that some two or three weeks after the will was executed, Amos Townsend, who is a beneficiary and a proponent of the will told her: "We got the papers fixed; the will to me and Claude, but the old man didn't know what he was doing." No objection was made to the testimony in the trial court, but on appeal respondents contended it was incompetent and contrary to the Dead Man's Statute, Art. 3716, R. S., 1925. The court of civil appeals held the testimony was not contrary to that statute, and we think that view is correct. However, it held the tesimony incompetent because the statement was Amos Townsend's conclusion, which, if made by him on the witness stand, would still be but his conclusion on the issue of testamentary capacity without the statement of any facts as a basis therefor. We do not agree with that holding. Amos Townsend, as a proponent of the will, was, in ef-

fect, an opposite party. Under the testimony offered by petitioners, he had enjoyed an intimate association with deceased for many years and was present when the will was executed. In that situation we think the testimony was admissible for such weight as the jury might see fit to give it on either testamentary capacity or undue influence. If made, it came at a time when Amos Townsend had an interest in the subject matter and it may, therefore, reasonably be regarded as a declaration against interest on both issues. See Moos v. First State Bank of Uvalde (Civ. App.), 60 S. W. (2d) 888 (er. dism.); Johnson v. Poindexter et al. (Civ. App.), 9 S. W. (2d) 172 (er. ref.).

The court of civil appeals erred in rendering judgment for respondents. Accordingly, its judgment is reversed and the cause is remanded to the district court for a new trial.

Opinion rendered February 13, 1946.

### ON REHEARING.

On original hearing of this cause we reversed the judgment of the court of civil appeals, and, that court having held the evidence insufficient to sustain the judgment of the district court, we remanded the cause to the latter court.

■ However, the court of civil appeals held that the trial court committed error in admitting the testimony of Miss Virgie Ruth Lackey, a witness for petitioners, that some two or three weeks after the will was executed, Amos Townsend told her: "We got the papers fixed; the will to me and Claude, but the old man didn't know what he was doing." We decided the testimony was properly received. Of course, the court of civil appeals did not consider that testimony in passing on the sufficiency of the evidence. In a motion for rehearing petitioners urge that the cause should be remanded to that court in order that it may consider that testimony in ruling on the sufficiency of the evidence. We have decided that the point is well taken and that, therefore, petitioners' motion should be granted.

On all other points we adhere to our original opinion, therefore respondents' motion for rehearing is overruled.

The judgment of the court of civil appeals is reversed and this cause is remanded to that court for further proceedings consistent with our holdings.

Opinion delivered March 13, 1946.