**Joe NORTON, Jr., Appellant,**

v.

**Isabella Perry CLARKS et al., Appellees.**

No. 7155.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 8, 1959.

Rehearing Denied Jan. 5, 1960.

Brown & Brown, Texarkana, for appellant.

Sidney Lee, Texarkana, for appellees.

DAVIS, Justice.

This is an appeal from a suit to set aside a will. Mattie Perry, an 87-year-old Ne-gro, executed her will on October 3, 1955, and willed everything she had to Joe Norton, Jr., a person not related to her. She died on June 26, 1956. Her will was admitted to probate on July 16, 1956. On June 7, 1957, plaintiffs-appellees filed a suit to set aside the will. On the trial in the County Court, the contest was denied and an appeal was taken to the District Court. In the District Court, in a trial before a jury, judgment was entered setting aside the will and Joe Norton, Jr., has perfected his appeal to this Court.

In the jury verdict in the District Court the jury found that Mattie Perry did not have testamentary capacity at the time she executed the will, and that she executed the will as a result of undue influence exerted upon her at the time by appellant.

Appellant brings forward 15 points of error. In his first seven points he complains of the action of the trial court in submitting the first special issue to the jury on the grounds of no evidence and insufficiency of the evidence. In his argument to the court, he quotes long segments of testimony of witnesses who testified to certain facts about Mattie Perry's health and mental condition for more than five years prior to her death as well as to certain facts about her conduct. In the testimony of the witnesses they swore that during those last five years of Mattie Perry's life she did not know her own children, that she would invariably pull off her clothes and would talk about some of her children, who had been dead many years, coming back and talking with her. From appellant's own witnesses it was proved that Mattie Perry was old and in poor health. She had a son whose mind was not right who lived with her. There was some difficulty as to whether or not her children could take and keep her during the last days of her life as to the effect it would have on her pension. Beginning back about 1949 or 1950 (her house burned in 1949), a son began taking and cashing her checks for her, and apparently buying

her needs. This son died in 1954, and then some one else started cashing the checks.

■ Along about the 3rd day of October, 1955, a witness who lived next door to Mattie Perry saw appellant and a woman go to Mattie's house. She watched them go inside and put her clothes on her, put her in a pick-up truck and leave with her. When she returned, this witness went over to her house and talked with her. She testified that Mattie Perry showed her a plastic bag that had some flowers in it. She testified that Joe bought them for her. On this occasion the witness asked her: "Where did you get all this stuff?" Mattie said: "We went up town." And the witness said, "Where?" Mattie replied: "Probably we went to heaven, Lessie, I just don't know." This connects the event to the date of the will. In my opinion, this is sufficient testimony to raise the issue of testamentary capacity under the laws of this state and the trial court did not err in submitting this issue. Birmingham v. Coleman, Tex.Civ.App., 241 S.W.2d 245, wr. ref., n. r. e.; Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884; Chandler v. Weimers, Tex.Civ.App., 57 S.W.2d 585, wr. ref.; Gulf Oil Corp. v. Walker, Tex. Civ.App., 288 S.W.2d 173, n. w. h.; Hickman v. Hickman, Tex.Civ.App., 244 S.W. 2d 681, wr. ref., n. r. e.; and Oglesby v. Harris, Tex.Civ.App., 130 S.W.2d 449, wr. dis., judgm. cor.

By points 8 through 14, appellant complains of the action of the trial court in submitting the second special issue and the evidence in support of same. There has been much written in the laws of this state about the mode and manner of proof in showing the exercise of undue influence in securing the execution of a will. Perhaps the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, is the leading case in this state on undue influence. In that case, a woman signed a will on December 12, 1927, when she was 77 years old. She was in bad health as was the testatrix in this case. Her mental capacity had been greatly

weakened and impaired by age, sickness and grief, and the latter by the recent death of a much-loved daughter. The facts in the Long v. Long case are in many points similar to this case, except that in the Long case, the testatrix did not die until five years after she signed the will. Mattie Perry died about eight months after appellant got her to make him the will.

■ Shortly after appellant had secured the will, he moved Mattie Perry into a small cafe building behind his house and kept her until she died. In this case, there is evidence of an unnatural disposition of her property, and as I have said before, she was possessed of a weak mind and body produced by age, infirmities and disease. The appellant had an opportunity to influence her to make the will. The attorney to whom he carried her was an attorney who had represented him for many years. There was consistent association of the proponent with the testatrix almost continuously during the last months of her life and he undoubtedly took charge of testatrix' will immediately after it was signed. Mattie Perry being of old age and of at least a weakened condition, the flowers that appellant gave her on the day she made the will would, in my opinion, be some evidence or an act in procuring the execution of the will. These facts are in line with the case of Hassell v. Pruner, Tex.Civ.App., 286 S.W.2d 266, wr. ref., n. r. e. For these reasons, I think the trial court did not err in submitting Special Issue No. 2. Oglesby v. Harris, supra; Whatley v. McKanna, Tex.Civ.App., 207 S.W.2d 645, wr. ref., n. r. e.; and Gunlock v. Greenwade, Tex.Civ.App., 280 S.W.2d 610, wr. ref.

■ Appellant's 15th point complains of the action of the trial court in overruling Secs. 16, 17, 18 and 19 of his motion for new trial. He cites the court to no authority of law that will support him in this point. He does cite a dissenting opinion from the Court of Criminal Appeals, which I do not believe is in point. Seriously, his

point complains of the testimony of two witnesses who, he contends, perjured themselves in testifying on the original trial. The jury believed their testimony. On motion for new trial, the trial court believed it, and we can see no reason to set these two findings aside. Point 15 is overruled.

Finding no error in the record, the judgment of the trial court is affirmed.