AGRICULTURAL AND MECHANICAL
COLLEGE et al., Appellants,

v.

Mozelle Dyer GUINN et al., Appellees.

No. 10678.

Court of Civil Appeals of Texas.

Austin.

July 15, 1959.

Rehearing Denied Aug. 5, 1959.

Will Wilson, Atty. Gen., Leonard Passmore, Asst. Atty. Gen., Runge, Marschall & Runge and Wilson, Logan & Lear, San Angelo, for appellant.

Kerr & Gayer and Upton, Upton, Baker & Griffis, and Craig Porter, San Angelo, for appellee.

HUGHES, Justice.

This is an appeal from a judgment denying probate to an instrument dated November 29, 1950, sought to be probated as the last will and testament of William A. Guinn who died in San Angelo, Texas, on December 27, 1950.

Proponents of the alleged will (hereinafter called "will") appellants here, were the Agricultural and Mechanical College of Texas and Texas Technological College who were named beneficiaries in the will.

Appellees here, respondents below, are Mozelle Dyer Guinn, surviving wife of deceased William A. Guinn, and intervenors Bill Guinn and Jimmie Jean (Guinn) Edwards, nephew and niece of deceased and Jack Edwards, husband of Jimmie Jean Edwards. It was stipulated that Bill Guinn and Jimmie Jean Edwards were persons interested in the estate of decedent.

Other phases of this controversy were before this Court in A & M College of Tex.

v. Guinn, Tex.Civ.App., 280 S.W.2d 373, writ ref. N.R.E.

The judgment denying probate to the will was based upon a jury verdict. In order that this verdict and other portions of this opinion may be understood it is necessary to set out certain stipulations made by the parties in a pretrial proceeding. They follow:

"(7) that the instrument which is offered for probate as the Last Will and Testament of William A. Guinn deceased, was signed by the said William A. Guinn on the 29th day of November, A.D.1950 in the law office of W. E. Hall, San Angelo, Texas; (8) that the only persons present when such will was signed, by the said William A. Guinn were the deceased Mrs. W. E. Hall and Mrs. Mozelle Dyer Guinn; (9) that neither Marion F. Hudson nor Sidney C. Hudson[1] saw William A. Guinn sign said instrument on November 29, 1950; (10) that neither Marion F. Hudson nor Sidney C. Hudson were present when William A. Guinn signed said instrument on November 29, 1950; (11) that Sidney C. Hudson and Marion F. Hudson signed said instrument in Kissimmee, Florida, on the 11th day of December, 1950; * * *"

The jury found that decedent did not have testamentary capacity on November 29, 1950, nor on December 11, 1950.

The jury also found that when the attesting witnesses (Hudsons) signed the will decedent was not actually aware that they were doing so and that neither of said witnesses signed the will "at the request of some one acting with the approval of William A. Guinn at the time."

The first point of error relates to the action of the Trial Court in suppressing the deposition of Sidney C. Hudson, one of the attesting witnesses to the will.

1. Attesting witnesses to the will.

The first interrogatory asked the witness to state his name, age and place of residence. The second interrogatory inquired as to his acquaintance with the decedent. We quote the remaining interrogatories:

"The officer taking your deposition will hand you an instrument purporting to be the Will of William A. Guinn, deceased, filed in the County Court of Irion County, Texas, the instrument being dated November 29, 1950, and said instrument purports to have been signed by William A. Guinn in the presence of Sidney C. Hudson and Marion F. Hudson as attesting witnesses. Did you sign such instrument and is that your signature?

"Interrogatory No. 4: Did William A. Guinn sign such instrument and is that his signature?

"Interrogatory No. 5: Did Marion F. Hudson sign such instrument and is that her signature?

"Interrogatory No. 6: Were you and Marion F. Hudson both present when William A. Guinn signed such instrument?

"Interrogatory No. 7: Did you and Marion F. Hudson each sign the instrument in the presence of each other and in the presence of and at the request of William A. Guinn?

"Interrogatory No. 8: Did William A. Guinn declare the instrument to be his last will and testament?

"Interrogatory No. 9: Were you and Marion F. Hudson each over the age of fourteen years at the time the will was signed by William A. Hudson?

"Interrogatory No. 10: Was William A. Guinn of sound and disposing mind and memory at the time he signed said will?

"Interrogatory No. 11: Approximately how old was William A. Guinn at the time he signed said will?

"Interrogatory No. 12: In so far as known to you, did William A. Guinn revoke said will at any time prior to his death?"

The witness answered the first two interrogatories by stating his name and by stating that he had known decedent since 1948. Interrogatories three through ten were answered "Yes." Number twelve was answered "approximately fifty five years of age." Number twelve was answered "No."

The witness Hudson testified in person upon trial. He reaffirmed his answers to interrogatories numbers 1, 2, 3 and 5.

The answers to interrogatories numbers 4 and 6 are supplanted by the stipulation of the parties.

It is undisputed that decedent was above the minimum age required for executing a will and that the attesting witnesses were above the minimum age required for such witnesses. Nor is there any evidence that the will was revoked. Thus the answers to interrogatories numbers 9, 11 and 12 become immaterial. Left are the answers to interrogatories numbers 7, 8 and 10.

As to interrogatories numbers 8 and 10 we quote from the record during the direct examination of Mr. Hudson by appellants on the trial:

"Q. Let me ask you in connection with the affidavit that you made before the Clerk of Orange County, if you didn't, weren't asked this interrogatory—Q. Did William A. Guinn declare the instrument to be his last will and testament? A. That's right. I will ask you further if your answer to that interrogatory wasn't Yes? A. That's right.

"Q. I will ask you if—

"Mr. Gayer: Just a minute, before you—we think that same limitation, that testimony should be limited not for the, as a proof of the execution of the will, but only for impeachment purposes.

"Court: I overrule the objection.

"Mr. Porter: Exception.

"Mr. Lewis: If the Court please, he is reading from the deposition which has been stricken on motion, and because of its inadmissibility as a deposition, and we—he is reading it now, as I understand for impeachment purposes, and that is the only purpose it could be admissible, if it does impeach, and we make the motion that Court instruct the jury that the question and the witness' answer to the question be considered only for the purpose of impeachment, if it does impeach.

"Mr. Runge: The deposition, as stated by counsel, may have been part —that is correct, but the question he asked, whether that statement was true or correct, has nothing to do with it.

"Mr. Lewis: It is the question and answer in the deposition I am driving at.

"Mr. Runge: He could ask that statement irrespective.

"Court: I believe I will overrule the objection.

"Mr. Lewis: Exception.

"Q. Back where we were there, I believe you did state that you answered interrogatory No. 8, did William A. Guinn declare the instrument to be his last will and testament? A. Yes. Q. And the affidavit made before the Clerk of the County Court of Orange County by you on February 10, 1951? A. That's right. Is that statement true or correct? A. That statement is not true.

"Q. You did make that statement on February 10th and swore to it before the Clerk of Orange County? A. I sure did, because I didn't know what that thing was all about.

"Q. I will ask you if you made this statement in answer to—

"Mr. Gayer: An objection goes to all of this.

"Court: It may follow all that testimony.

"Q. —in answer to interrogatory No. 10 which was, was William A. Guinn of sound and disposing mind and memory at the time he signed said will, and you answered that interrogatory yes; is that correct? A. That is because I didn't know what sound, what sound mind meant in legal terms. Yes, I did.

"Mr. Runge: Doesn't what?

"Witness: I said at that particular date, in legal terms I didn't know what sound mind was.

"Q. You did answer the interrogatory? A. I did.

"Q. Was Bill Guinn of sound mind; you answered yes? A. I did.

"Q. Is that statement true or correct? A. That is an untrue statement.

"Q. You did nevertheless answer that question on February 10th? A. I did.

"Q. Two months after Bill Guinn's death, or less; yes? A. Yes.

"Q. As well as the others? A. I did."

Under this state of the record we believe that the answers to interrogatories numbers eight and ten were before the jury for all purposes.

Then remains only interrogatory number 7 and the answer which relate to the execution of the will by the attesting witnesses and whether or not at the request of the testator. We quote again from the direct examination of the witness Hudson by appellants:

"Q. I show you an instrument that's been identified by the reporter as Proponents' Exhibit No. 14; I will ask you to turn to the last page of that, Mr. Hudson; I will ask you if the signature there, Sidney C. Hudson, is your signature? A. It is.

"Q. When did you put your signature on there? A. December 11th.

"Q. Where—what year, by the way, for the record? A. 1950.

"Q. 1950, and where was that signature affixed? A. Tropical Hotel, in the lobby of the Tropical Hotel.

"Q. Now, with reference to the occasion we have been questioning you about, was that the morning of the 11th as Mr. Guinn was preparing to leave for San Angelo? A. Right, yes sir.

"Q. Where was Mr. Guinn when you signed and affixed your name to that instrument? A. He was sitting in the chair by the fireplace.

"Q. And in the lobby there? A. In the lobby of the hotel.

"Q. And where did you sign the instrument? A. At the hotel desk.

"Q. And about how many feet is that from where Mr. Guinn was sitting? A. As I said before, about 12.

"Q. Will you examine that instrument and tell me whether or not that is the signature of your wife Marion C. Hudson? A. It is.

"Q. Was it affixed at the same time, or not? A. Just as soon as I signed it she did.

"Q. Both of you had at the same desk? A. At the same desk.

"Q. With the same pen? A. With the same pen.

"Q. Who requested you to sign that will, Mr. Hudson? A. Mrs. Guinn.

"Q. Who requested Mrs. Hudson to sign it? A. I don't know. I guess she was following her husband.

"Q. Were you both standing there at the time Mrs. Guinn requested it? A. Yes.

"Q. —you to sign it? A. Yes.

\*     \*     \*     \*     \*     \*

"Q. You do not know whether he [decedent] told Mrs. Guinn to come over and tell you all to sign the will or not, do you? A. I sure don't.

"Q. You presumed that was what happened when you and Marion signed it? A. No, I didn't. I didn't presume that either.

"Q. Why did you sign the will, Sid? A. Because they were friends of ours, and we thought we were doing a favor. I certainly didn't know I was going to get involved; for Mr. and Mrs. Guinn.

"Q. You thought Mr. Guinn wanted you to do it at the time you signed it? A. No, I didn't think anything.

"Q. You thought they were doing you a favor there? A. I didn't say they were doing me a favor.

"Q. You thought you were doing them a favor? A. Certainly; they were my friends.

"Q. When you signed the will you thought you were doing Bill Guinn a favor? A. I didn't say I was doing Bill Guinn a favor. I said I thought I was doing Mr. and Mrs. Guinn a favor.

"Q. And that they wanted the will signed by you and Marion? A. Not necessarily Marion and myself, because we just happened to be there at that time.

\*     \*     \*     \*     \*     \*

"Q. I will ask you if in the sworn statement which you signed before the

County Clerk of Orange County if you didn't in answer to this interrogatory— 'Did you and Marion F. Hüdson ever sign the instrument in the presence of each other and in the presence of and at the request of William A. Guinn? I will ask you if you didn't sign that?' Your answer to that interrogatory is yes. A. If that is what it says.

"Q. I will ask you to examine it, interrogatory No. 7; it is right there, and the answer to No. 7 is over there. A. That's right.

"Q. You did so answer that interrogatory? A. Yes."

We are also of the opinion that interrogatory number eight and its answer were before the jury for all purposes.

If confirmation of these conclusions be needed then we find it in the fact that the Trial Court overruled the request of appellees to instruct the jury that the prior statements of the witness Hudson inconsistent with his trial testimony could be used for impeachment purposes only.

Appellants in their brief say: "The use of the Hudson deposition for impeachment purposes alone, while forming a basis for jury disbelief of his testimony given on the trial of this cause, could form no basis for a jury finding on the pertinent issues favorable to appellants. Deprived of Hudson's deposition testimony relative to the circumstances surrounding the attestation of the Guinn will, the appellants were thereby deprived of virtually all direct evidence relating to such circumstances."

It is not shown that the jury knew that the deposition excerpts admitted in evidence were offered for impeachment purposes only. When admitted, as we have shown, they were not so offered and the Court did not instruct the jury that they were to be so considered. The proper manner, in our opinion, to appraise the validity of appellants' contention is to reverse the situation and assume that appellants had obtained a favorable jury verdict. Would appellants then say and would we then hold that the verdict was without evidence to support it? We seriously doubt either eventuality.

In discussing harmless error, Rule 434, Texas Rules of Civil Procedure, the Fort Worth Court of Civil Appeals in Maddox v. G. C. & S. F. Ry. Co., 293 S.W.2d 499, 504, writ ref., N.R.E., stated: "As to evidence improperly excluded, it would appear that before an appellate court could reverse and remand a case because thereof it must conclude that in all reasonable probability the jury returned a verdict other than that which it would have returned had it received the benefit of the evidence which was excluded."

The evidence excluded here by suppression of the depositions would be a mere repetition of that which the jury heard. Where the equivalent of excluded evidence is actually admitted we are unable to say that the error, if any, is shown to have probably affected the verdict. Mrs. Baird's Bread Co. v. Hearn, Tex., 300 S.W.2d 646.

Because of this conclusion we do not discuss or decide the validity of the grounds upon which the Hudson deposition was suppressed.

Appellants' second point is that the Trial Court erred in excluding from evidence the following letter written by appellee Mrs. Mozelle Dyer Guinn to George Donnell, dated November 27, 1950:

"W. A. Guinn
"–O Ranch
"Kickerbocker, Texas

"November 27, 1950

"Dear George and Margret

"I finally got all my kin on one page, have had it a long time, but as usual just didn't get it off to you.

"We plan to fly to Florida Tuesday or Wednesday of this week, and with all the *plain* mishaps maybe I should get this off to you if I can make my-

self do it I will write in some my personal things also the furniture and such, tell Margret they should teach kids in school how to write a will, maybe it wouldn't sound so far fetched or out of this world or something.

"Bill has been quite ill for the past two weeks, he started out just feeling bad and finally thought it was just the flu, but after going through the clinic, the Dr. called it a stomache ulcer and of course you know what that diet means to Bill, no coffee, cigaretts etc. no nothing a man just well be dead quite Bill,

"Company came in and I stopped right here—but Bill and Bill Hall have signed the will and made a little change in it, as he had put so much in the base ball—he decided not to give it to the Guinn children.

"I'll write you a line from Fla. They say it is cold there this winter just my luck, we plan to stay three months. Bill still feels pretty bad.

"Hoping you both a very Merry Xmas.

"Yours very sincerely,

"Mozelle Guinn"

Introduction of this letter in evidence was objected to by intervenors on the ground that it was immaterial, irrelevant and hearsay.

Appellants contend the letter is material in that it sheds light on the issue of the mental capacity of decedent when he executed the will; also that it shows that appellee Mrs. Guinn believed that her husband then had testamentary capacity. They say: "The record fairly demonstrates that the letter was not offered for the purpose of proving the truth of the statements therein contained, such as the fact that W. A. Guinn had been sick for two weeks or that the doctor had actually diagnosed his sickness as a stomach ulcer, but rather to demonstrate, regardless of the truthfulness of the statements contained in the letter, that his wife, who now contests his

will, believed, at a very crucial period (the letter was written within a few days of the time the testator executed his will) that the testator possessed the capacities which would tend to prove that he had testamentary capacity."

It is to be noted that this letter was written two days before the will was executed by decedent.

■ The statement in the letter that he had signed the will was stipulated to be erroneous. That he was ill and had changed his will, as stated, was established by other competent and undisputed evidence. As to any inference which might be drawn from the letter reflecting the opinion of Mrs. Guinn that her husband was of sound mind the record contains much more direct evidence of this opinion. Mrs. Guinn was shown to have taken a very active part in the execution of the will by her husband. Under these facts we are of the opinion that the exclusion of this letter was harmless error under Rule 434, supra.

We also hold that the letter was inadmissible per se.

■ As a declaration against the interest of the declarant, Mrs. Guinn, it was inadmissible because it was made before the execution of the will and hence before Mrs. Guinn was possessed of any interest under it. Bass v. Bass, 207 S.W.2d 103, Austin Court of Civil Appeals, writ ref. N.R.E., and authorities there cited.

■ Considered as an admission against a party to the suit we are also convinced that the letter was not admissible. As to the nature and admissibility of such admissions see McCormick and Ray, Texas Law of Evidence, Second ed., Secs. 1121 et seq.

Generally it is stated that such an admission may be defined:

"* * * as any statement made or act done by one of the parties to any action or on his behalf which amounts to a prior acknowledgment by such

party that one of the facts relevant to the issues is not as he now claims." McCormick and Ray, supra, Sec. 1121.

Such admissions are received as evidence of the truth of the matters asserted in them and constitute an exception to the hearsay rule. The justification for this exception is based, in a large part, upon the ground that the declarant may himself go upon the stand and deny, qualify or explain the alleged admissions. Sec. 1121, note 9, McCormick and Ray, supra.

The declarant in this case, Mrs. Guinn, did not testify and there is no assurance that she would have been permitted to testify in denial or explanation of the. statements contained in her letter.[2] See: Art. 3716, Vernon's Ann.Civ.St.; McKibban v. Scott, 131 Tex. 182, 114 S.W.2d 213, 115 A.L.R. 1421. Thus one of the principal justifications for the exception is not shown to be present.

To admit this letter in evidence for the purpose stated by appellants, i. e. to prove that Mrs. Guinn believed that her husband was then possessed of mental capacity to execute a will, would violate the rule against pyramiding inferences. The jury in order to formulate this finding, would have to infer first that the purported facts stated in the letter were evidence of the mental capacity of decedent and second to infer from such inference that Mrs. Guinn believed it. Inference must be based on and reasonably deduced from facts, not from other inferences. Texas & N. O. R. Co. v. Burden, 146 Tex. 109, 203 S.W.2d 522; 17 Tex.Jur. p. 247.

We have examined the following cases cited by appellants as authority for admitting this letter in evidence:

Moos v. First State Bank of Uvalde, 60 S.W.2d 888, Beaumont Court of Civil Appeals, writ of error dismissed, Johnson v. Poindexter, 9 S.W.2d 172, Eastland Court of Civil Appeals, writ ref.; Adams v. Adams, 253 S.W. 605, Beaumont Court of Civil Appeals, error dismissed, 114 Tex. 582, 278 S.W. 1114, Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884.

In none of these will cases did the court admit an admission against a party not valid as a declaration against interest where the issue was the mental capacity of a testator.

We conclude that the court did not commit reversible error in excluding from evidence the proffered letter.

Appellants' third point of error is that the Trial Court erred in not sooner admitting the will in evidence.

Appellants' direct evidence occupies the first 231 pages of the statement of facts. The will was the last evidence submitted by them and it commenced on page 214 of the statement of facts. The will was previously offered in evidence on pages 125 and 130 of the statement of facts.

Appellants say:

"The failure of the trial court to admit the will in evidence when first offered was very harmful to proponents' case before the jury, since it had the effect of imparting to the jury the impression that the presiding judge thought there were some character of irregularities in the document itself. Such action had the effect of improperly influencing the jury to find all issues against proponents, and the jury's findings might well have been entirely different if the trial court had not improperly refused to admit the document when first offered. When, at last, at

2. The charge to the jury contained this instruction:
"You are instructed as a part of the law applicable to this case that Mozelle Dyer Guinn as the surviving wife of William A. Guinn, deceased, is not permitted by law to give evidence relating to any transaction or conversation with or statement by the said William A. Guinn unless called to testify by A & M College or Texas Technological College."

the close of proponents' testimony, and after repeated urgings by proponents, the trial court finally admitted it, the harm had already been done."

No authorities are cited by appellants to support their claim of error in this regard. To sustain this point would open a new vista of reversible errors based on nothing but pure speculation. It would also have the unhappy consequence of denying to the Trial Judge the opportunity of revising his rulings on the admissibility of evidence during the progress of the trial. This point is overruled as being completely devoid of merit.

Appellants' fourth and last point is that the court erred in basing its judgment on the jury's answer to Special Issue number one because such answer is not "consistent" with the evidence with reference to whether or not decedent understood that he was making a will, the nature and extent of his property, the objects of his bounty, and the disposition he was making of his property.

We are of the opinion that this point is inadequate. Whether it raises the question of no evidence or of a finding against the overwhelming weight of the evidence we are left in doubt. In either event our ruling would be fruitless.

Issue No. 1 inquired as to the mental capacity of decedent when he signed the will on November 29, 1950.

This issue was answered "no." Had it been answered "yes," answers to other issues would have required judgment denying the will probate. The stipulated facts are that the will was not witnessed until December 11, 1950. In answer to Special Issue No. 2 the jury found that decedent was not possessed of testamentary capacity on this date. Appellants make no complaint that the answer to this issue was not abundantly supported by the evidence.

The law requires that a testator have testamentary capacity both when he signs the will and when it is witnessed as required by law. Venner v. Layton, 244 S.W.2d 852, Dallas Court of Civil Appeals, writ ref., N.R.E.

Finding no reversible error, the judgment of the Trial Court is affirmed.

Affirmed.