Jud CRAMER, Appellant,

v.

Larry Bruce WHITE, Trustee, Appellee.

No. 17784.

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 4, 1977.

Rehearing Denied March 4, 1977.

Kelly & Walker and Jearl D. Walker, Fort Worth, for appellant.

Locke, Purnell, Boren, Laney & Neely, Stephen Philbin, Dallas, for appellee.

## OPINION

HUGHES, Justice.

Larry Bruce White, as trustee for himself and his brother, Robert White, sued Jud Cramer for $10,000.00 paid (one-half as earnest money; one-half as consideration for option to buy a tract of land up to one day before closing of transaction) by Larry and Robert to Cramer at the time of executing a contract to purchase a farm in Ellis County. At trial Larry contended that Cramer had committed an anticipatory breach of the contract. Cramer denied the breach allegation and alleged that Larry was himself in breach. In his brief Cramer asserts that the option terminated contractually when Larry failed to deliver to Cramer on or before February 27, 1974, written notice of his intent to buy such land.

Pertinent portions of the contract are:

"2. The purchase price is $432,000.00 payable as follows: $ See Para. II B cash, of which Buyer has deposited with the Seller Buyer's check subject to collection for $10,000.00 as part payment, receipt of which is hereby acknowledged by Seller. The said $10,000 payment shall represent a $5,000.00 payment for the option to purchaser to declare this contract null and void on or before February 27, 1974, and $5,000.00 earnest money which shall be credited toward the purchase price at time of closing. In the event option to purchase is not exercised by purchaser, in writing, on or before February 27, 1974, the entire $10,000 pre-

payment shall be forfeited to the seller. It is also agreed that Purchaser has the right at any time prior to February 28, 1974, to sell, or transfer, the option to purchase set out above.

"Balance to be paid in accordance with Paragraph II C of the Special Condition.

" . . .

"10. Other Terms: Closing shall take place on February 28, 1974, at Rattikin Title Co., Throckmorton Street, Fort Worth, Texas. . . .

*"SPECIAL CONDITIONS*

"A. Seller agrees to furnish, at Seller's expense, a current survey of the property covered hereby, the same to be prepared by a registered professional surveyor acceptable to Purchaser, which survey shall be furnished at time of closing. Such survey shall locate all easements, roads, and rights-of-way, shall show no encroachments upon the property, and shall contain the surveyor's certification as to the number of net acres contained in the property, exclusive of any land lying within encroachments, easements, roads and rights-of-way. The purchase price for the property shall be adjusted upward or downward so that it shall be an amount equal to $3,000.00 times the number of net acres shown by such surveyor's certification, any such adjustments to be made pro rata to the cash down payment at closing and to the principal amount of the First Lien promissory note, hereafter referred to as the 'Note'.

"B. The down payment shall be $82,350.00 which shall consist of 12½% principal plus one year prepaid interest at a rate of 7½% per annum.

" . . .

"K. All prior documents and agreements executed by and/or between the parties hereto with respect to the property herein described are hereby cancelled, terminated and declared void, each signatory hereto releasing all others from any and all liability arising under or pursuant to said

prior documents and agreements, the execution hereof being the consideration for said mutual releases. Anything contained herein to the contrary notwithstanding, Buyer or Seller shall have no liability whatever to Seller or Buyer, in excess of the $5,000.00 option payment and $5,000.00 earnest money to be credited to the purchase price (total of $10,000.00 maximum potential liability) in the event the purchase and sale herein described is not consummated for any reason whatever, Buyer & Seller hereby waiving any and all other rights, remedies or causes of action for damages or equitable relief available at law, in equity or pursuant to other provisions of this Agreement." (S.F. Def.Ex. #1)

Larry did not give written notice of intent to buy. Cramer did not deliver a net acreage survey.

The case was tried to a jury. Cramer's motion for instructed verdict was denied. Three special issues were submitted to the jury, which, with answers, are as follows:

"QUESTION NO. 1:

"Did Jud Cramer, before February 28, 1974, communicate to Larry Bruce White a positive refusal to produce on February 28, 1974, time of closing, a 'net acreage survey'?

"Answer 'Yes' or 'No'.

"ANSWER: Yes

"If you have answered Question No. 1, 'Yes', then answer Question No. 2; otherwise do not answer Question No. 2.

"QUESTION NO. 2:

"Did the refusal by Jud Cramer, if any, constitute the sole or only reason for the failure of Larry Bruce White to exercise the option to purchase in writing on or before February 27th, 1974?

"Answer 'Yes' or 'No'.

"ANSWER: Yes

"If you have answered Questions 1 and 2, 'Yes', then answer Question No. 3; otherwise do not answer Question No. 3.

"QUESTION NO. 3:

"Was Larry Bruce White ready, willing and able on February 28th, 1974, to perform and consummate the contract to purchase the subject property if the 'net acreage survey' was produced on February 28th, 1974?

"Answer 'Yes' or 'No'.

"ANSWER: Yes"

Cramer's motion for judgment non obstante veredicto was denied; judgment was rendered for Larry; Cramer's first amended original motion for new trial was overruled and appeal was perfected.

Larry bases his case upon the fact that no "net acreage survey" was ever delivered to him or to the closing officer ("net acreage survey" under the contract in this instance meaning the survey of the gross acreage of the land in question less the encroachments, easements, roads and rights-of-way).

Cramer contends that he was not obligated to furnish the net acreage survey until time of closing on February 28, 1974, and then only if Larry had delivered notice in writing to Cramer on or before February 27, 1974, that he was exercising the option to purchase. (Cramer did furnish Larry gross acreage surveys that identified easements but did not show easement acreage.)

Larry and Robert testified that they were ready to close the deal when they received the net acreage survey but that Cramer told them through Alvin Botts, the escrow and closing officer for Rattikin Title Company, " . . . he wasn't going to furnish him any other survey other than the one we had here." " . . . that's the way he bought the property" and that he wanted to sell the property like it was. Robert contended that they did not give written notice of intent to purchase because they assumed "there was nothing to be done" since Cramer "obviously wasn't providing me with a net acreage survey." Further, the Whites claimed that it was too late for Cramer to obtain a net acreage survey a day ahead of closing since it would take at least three days to have the same prepared.

We affirm the judgment of the Trial Court.

■ Points of error Nos. 1–13 address themselves to the contention that the Trial Court erred in submitting special issue No. 1 and in overruling Cramer's objections both to the special issue and to rendering a judgment based upon the jury's answer thereto for the reason that there was no evidence, insufficient evidence and no evidence of probative value to support the judgment of the Trial Court. Cramer contended that Larry White did not prove that he made a positive, unqualified refusal to provide a net acreage survey at the time required by the contract nor that he made an unqualified refusal to perform the contract.

Points of error Nos. 1–13 are overruled.

■ In considering the "no evidence" points we must view the evidence in the light most favorable to the jury's findings and disregard all evidence to the contrary. If there is any evidence of probative force to support the jury's findings, we are bound by those findings. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ In considering whether the evidence is "insufficient" to support the jury's findings, we must review all the evidence. The verdict should be set aside only if it is so contrary to the overwhelming weight of all the evidence as to be clearly wrong or manifestly unjust. *In Re King's Estate, supra.*

We find the evidence in the cause to be sufficient, as well as of ample probative value, to support the answer of the jury to special issue No. 1. There is admissible evidence constituting admissions by a party against interest from Alva Kilgore (Cramer's real estate agent) that Cramer told Kilgore to tell the Whites he would sell the property "the way he bought it." "He said tell them—Well, sell it the way he bought it, the contract he had prior to that." (Testimony is undisputed that Cramer bought the property on a gross acreage basis.) *Agricultural and Mechanical College v. Guinn,* 326 S.W.2d 609 (Tex.Civ.App.—Austin, 1959, writ ref'd n. r. e.); 2 C. McCormick and R. Ray, Texas Law of Evidence § 1121 (2d ed. 1956). We find Cramer's statements broad enough to constitute a repudiation of his promise to furnish a net acreage survey at closing. " . . . It must be a distinct and unequivocal, absolute refusal to perform the promise, . . . ." *Carlisle v. Green,* 131 S.W. 1140, 1142 (Tex.Civ.App. 1910, no writ), quoting *Kilgore v. Northwest Texas Baptist Educational Soc.,* 90 Tex. 139, 37 S.W. 598, 600 (1896). Cramer's statements were communicated to Larry and Robert. Larry responded to Kilgore on February 27th that " . . . there is no way we can do this deal then if you don't get us a net survey, . . . ." (Larry and Robert maintained the net acreage survey was material because the land was contracted for at $3,000.00 per net acre and there appeared to be from 3 to 10 acres in easements.)

Points of error Nos. 14–21 complain that there was no issue submitted as to whether Larry relied upon Cramer's communications of a positive refusal to carry out the terms of the contract and that there was no evidence and insufficient evidence from which to infer a reliance upon such refusal.

■ In his brief White argues that Cramer failed to preserve his objection to special issue No. 2 by failing to request a substantially correctly worded issue or to object to its wording. Cramer did object to the failure to submit an issue as to reliance, however. "An objection is necessary (and sufficient) to preserve complaint of the error in omitting one or more controlling issues which are necessary to submit completely the component elements of a theory of recovery or of defense relied upon by the *opponent* of the objecting party . . . ." 3 R. McDonald, Texas Civil Practice § 12.-27.1 (1970). Although it is our opinion that Cramer preserved his objection, we do not find the objection to be well taken.

We overrule Points of error Nos. 14–21.

■ The communications of the parties through Kilgore on February 27, 1974, quot-

ed above constituted repudiation by Cramer, acceptance of such by the Whites and reliance by the Whites as evidenced by Larry's statement on February 27, 1974, to Kilgore: " . . . I guess its over and dead, and he said he guessed so, too. I did call him back on the 28th to see if he had heard anything else, anybody called him, and he said no, that he hadn't." We do not find that Larry's calling back on the 28th to see if anything had happened amounted to a waiver of the breach. "It is not a waiver for a party not in default to make an honest effort to induce the party who has breached his contract to withdraw the repudiation and perform the contract." *Haddaway v. Smith*, 277 S.W. 728, 731 (Tex.Civ.App.—Amarillo 1925, no writ). It did not amount to the Whites having "treated with him . . . for a continuance of . . . the contract," as was the case in *Kilgore v. Northwest Texas Baptist Educational Soc.*, 90 Tex. 139, 37 S.W. 598 (1896).

Points 22 and 23 are not before this Court, having been expressly abandoned in Cramer's brief.

■ Points of error Nos. 24–27 complain that there was no evidence and insufficient evidence to submit special issue No. 2 on whether or not the refusal by Cramer was the only reason for the failure of Larry Bruce White to exercise the option to purchase in writing on or before February 27, 1974.

We overrule Points of error Nos. 24–27.

We hold that the jury had sufficient evidence to find the refusal of Cramer was the only reason that Larry failed to exercise the option. The statements made by Cramer and Larry on February 27, 1974, above quoted, and Cramer's unavailability to Kilgore on such date and the other surrounding circumstances gave the jury evidence to answer as they did.

Judgment affirmed.