F. A. HUBACEK V. ENNIS STATE BANK

No. A-6679. Decided October 8, 1958.
Rehearing overruled November 12, 1958.
(317 S.W. 2d Series 30)

*Griffith & Lumpkins* and *Stuart B. Lumpkins,* all of Waxa-hachie, for petitioner.

The Court of Civil Appeals erred in holding that evidence

of a parol agreement between the bank and the used car dealer was inadmissible as a violation of the parol evidence rule on the ground that the parol agreement varied the terms of the endorsed notes not sued on. Chalk v. Daggett, 257 S.W. 228; Galloway v. Floyd, 81 S.W. 805; Robert & St. John Motor Co. v. Bumpass, 65 S.W. 2d 399, error dismissed.

*George P. Hines,* of Ennis, *Ralph Hartman,* of Waxahachie, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is a suit by the Ennis State Bank against F. A. Hubacek for the principal, interest, and attorney's fees on five promissory notes and for a foreclosure of chattel mortgages securing same. Three of the notes were executed by Hubacek and the other two were endorsed by him. All notes provide for interest at the rate of ten per cent per annum.

Hubacek admitted his liability to the bank for the entire amount claimed as principal, interest and attorney's fees on the notes, but by way of counter claim he sought to offset the sum of $912.43 alleged to be due him under a prior oral agreement between himself and the bank whereby he, a dealer in used automobiles, would sell cars, and when cars were sold and notes acceptable to the bank were taken, they would be endorsed by him; that an interest rate of ten per cent would be charged on all notes; and that when a note endorsed by him was paid in full two per cent (2%) thereof would be held by the bank in reserve and credited to his account to be applied to any loss on any of the notes, the difference to be placed to the account of Hubacek if and when the parties should terminate their contract. Whether or not the alleged contract was ever made was a sharply disputed issue which was determined by the jury in favor of Hubacek.

The case was submitted to the jury on two special issues, which, together with the answers thereto, were as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the plaintiff, Ennis State Bank, through its agents, servants or employees, and F. A. Hubacek made and entered into an agreement that from notes endorsed to said bank by Hubacek, that said bank would hold in reserve for Hubacek an amount equal

to two per cent of the amount of the principal of said notes, out of the interest, which said reserve, if any, could be used by Hubacek, and the bank, to pay any loss on any of the notes endorsed to the bank by Hubacek, and any excess over said losses, if any, would be paid to Hubacek?

Answer 'Yes' or 'No.'

ANSWER: Yes.

If you have answered the preceding issue 'Yes' then answer the following issue; otherwise, do not answer it.

SPECIAL ISSUE NO. 2

From a preponderance of the evidence, what do you find was the amount created for such reserve, if any, under the terms of such agreement, if you have found there was such agreement?

Answer, stating the amount of dollars, if any, and cents, if any, in figures.

ANSWER: $912.43."

Upon that verdict the court rendered judgment in favor of the bank on the five notes in the aggregate amount of $1562.84, which included interest at the rate of ten per cent plus attorney's fees upon the principal and interest. The court further found that the bank was indebted to Hubacek in the amount of $912.43 which should be allowed as a credit against the notes, and subtracting that amount from $1562.84, rendered judgment in favor of the bank for $650.41 plus interest from date of the filing of the suit and attorney's fees, with foreclosure of the chattel mortgages. That judgment was reversed by the Court of Civil Appeals and judgment rendered in favor of the bank for $1562.84, the full amount sued for, with foreclosure of the chattel mortgages. 308 S.W. 2d 60.

Whether the trial court's judgment or that of the Court of Civil Appeals is correct turns on a proper application of the parol evidence rule to the facts of the case. The general incidents and consequences of that rule are not open to question and are well understood.

■ The parol evidence rule is not a rule of evidence at all, but a rule of substantive law. McCormick and Ray, Texas Law of

Evidence, 2nd Ed., Sec. 1601; 20 Am. Jur., Evidence, Sec. 1100; 32 C.J.S., Evidence, Section 851.

When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements, 17 Texas Jur., Evidence, Sections 352, 353; McCormick and Ray, supra, Section 1601.

On the other hand, the rule does not preclude enforcement of prior or contemporaneous agreements which are collateral to an integrated agreement and which are not inconsistent with and do not vary or contradict the express or implied terms or obligations thereof. McCormick and Ray, supra, Section 1631; 17 Texas Jur., Evidence, Section 370; Williston on Contracts, Rev. Ed., Vol. 3, Section 642; Wigmore on Evidence, 3rd Ed., Vol. IX, Section 2430; Page on Contracts, 2nd Ed., Vol. 4, Section 2191; Corbin on Contracts, Vol. 3, Section 594.

In oral argument before this Court counsel for respondent indicated that the agreement found by the jury might be enforceable if it had been written rather than oral. The parol evidence rule countenances no such distinction; it precludes enforcement of inconsistent agreements, whether written or oral. Wigmore states: "Now, so far as the phrase 'parol evidence rule' conveys the impression that what is excluded is excluded because it is oral—because somebody spoke or acted other than in writing, or is now offering to testify orally—that impression is radically incorrect. * * * So that the term 'parol' not only affords no necessary clue to the material excluded, but is even positively misleading." Wigmore on Evidence, 3rd Ed., Vol. IX, Section 2400. Corbin refers to the Parol Evidence Rule as "a rule that is as truly applicable to written evidence as to parol evidence." Corbin on Contracts, Vol. 3, Section 576, p. 230. From Page on Contracts, Vol. 4, Section 2139, p. 3717 we take this statement: "While the written contract usually acts substantially as a merger of prior or contemporaneous oral negotiations, it also operates as a merger of prior written negotiations, as where it merges prior letters between the parties, or a prior written instrument not made part of the subsequent contract * * *. The real objection to the evidence, therefore, is not that it is oral as distinguished from written, but that it is extrinsic — that is, that it tends to prove what is not a term of the contract."

Petitioner tendered into court the full amount due, principal

and interest, on all five notes in suit, less the sum of $912.43. The sum of $912.43 represents two per cent of $45,621.85 theretofore paid, or then due, the bank in discharge of notes endorsed by him and sold to the bank. He contends that the oral agreement which he seeks to enforce by counter claim is a collateral agreement which in no way varies or contradicts the terms or obligations of the notes or chattel mortgages made the basis of the bank's suit or of those previously paid and discharged.

The oral agreement established by the testimony of the petitioner and the finding of the jury related to and affected only notes made by others and endorsed by petitioner. To put it another way, no part of the proceeds of any note made by petitioner was to be placed in the reserve account. If, therefore, the parol evidence rule precludes enforcement of the oral agreement, it is because the agreement varies or contradicts the terms or obligations of the endorsed notes. Whether it does so requires a more detailed statement of the testimony supporting the jury's finding.

In 1953 respondent, Ennis State Bank, agreed to purchase automobile notes from petitioner on the same basis they had theretofore been purchased by the Citizens National Bank, that is, that two per cent on the principal amount of each endorsed note purchased by it would, out of the interest, be set up in a reserve account in petitioner's name when the note was liquidated. As consideration for the payment of the two per cent into the reserve account petitioner was to make collections from the makers of the notes and handle all necessary repossessions of automobiles in cases of default. The reserve account fund, although not subject to withdrawal, was to be the property of petitioner, but such fund, or so much thereof as was necessary, was to be used to pay any note in default, with surrender of the note and its security to petitioner, and at the termination of the agreement to pay any endorsed notes then unpaid, the balance, if any, to be paid to petitioner.

■ The obligation of petitioner as endorser of two of the notes in suit and of the endorsed notes theretofore paid was that they would be paid according to their tenor when presented, and, upon dishonor, that he would pay them. Article 5936, sec. 66, Vernon's Annotated Texas Statutes. His obligation to pay the notes upon default of the makers was absolute and not contingent.

The rule with respect to proof and enforcement of collateral

agreements is thus stated in the Restatement of the Law of Contracts, Vol. 1, sec. 240:

"(1)  An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

(a)  is made for separate consideration, or

(b)  is such an agrement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

The collateral oral agreement found by the jury and supported by petitioner's testimony is obviously supported by a separate consideration — the undertaking to collect payments when due from makers of the endorsed notes and to attend to all necessary repossessions in the event of default. Conceivably, we could approve the rule of the Restatement found in Section 240(1)(a), and rest our judgment of reversal on that rule alone if the terms of the agreement be not inconsistent with petitioner's obligation as an endorser. That is unnecessary, however, for the facts also bring this case within the rule announced in Section 240(1)(b).

In discussing sub-paragraph (b) the Restatement points out that there are situations in which it is so natural to make collateral agreements that in such situations the parol evidence rule does not preclude their enforcement, if not inconsistent. Enforcement of such agreements is contemplated even though there be no separate consideration. The following example of such agreements is given: "A and B in an integrated contract respectively promise to sell and to buy Blackacre for $3000.00. A contemporaneous oral agreement between them that the price shall be paid partly by discharge of a judgment which B has against A is operative."

Text writers in the field of contracts and evidence, although using different approaches to the question, support the rule of the Restatement with singular unanimity. See Corbin on Contracts, Vol. 3, secs. 583, 584, 594; Williston on Contracts, Rev. Ed., Vol. 3, secs. 637, 642; Elliott on Contracts, Vol. 2, sec. 1633; Wigmore on Evidence, 3rd Ed., Vol. IX, sec. 2430, 2443; McCormick and Ray, Texas Law of Evidence, 2nd Ed., Vol. 2,

secs. 1631, 1632, 1643. Both the Restatement and the writers recognize that it is more than normally natural that agreements will be made collaterally to the execution of negotiable instruments because to include them would destroy negotiability.

The rule also finds support in cases decided by the courts of this state. See Thomas v. Hammond, 47 Texas 42, Hansen v. Yturria, Texas Civ. App., 48 S.W. 795, 48 S.W. 797, no writ history, and Dooley v. Gray, Texas Civ. App., 54 S.W. 2d 558, writ dismissed.

In Thomas v. Hammond suit was on a vendor's lien note given as purchase money for 400 acres of land. By reconvention the defendant sought recovery of damages for breach of a collateral oral contract made at the time the note was executed. The substance of the agreement was that the holders of the note would use the first payments made to discharge outstanding liens, one of which was a prior vendor's lien held by one Coleman on 67.6 acres. Payments had not been so applied and Coleman had recovered the 67.6 acres from the defendant by paramount title. The oral agreement was found by a jury to have been made. The plaintiffs contended that the parol evidence rule prohibited enforcement of the oral agreement. This court held it did not, pointing out that the facts and circumstances surrounding the transaction pointed to the probability of the agreement and concluding: "The alleged agreement in the case before us is so far distinct from and collateral to that part of the contract reduced to writing, as to allow of its establishment by parol evidence." 47 Texas 54. As in the case before us the oral agreement dealt with the manner in which a portion of the proceeds of the note would be used by the payee.

The collateral agreement in this case is one which might naturally have been made by parties situated as were petitioner and respondent. The proof shows that the Citizens National Bank had similar agreements with six other automobile dealers.

The only question remaining is whether the agreement to pay petitioner for his services out of interest collected is inconsistent with the terms and obligations, express or implied, of the endorsed notes. We think not.

Enforcement of the agreement would not result in a rebate of either principal or interest so as to relieve petitioner of his obligation to pay in full the principal and interest provided for in the notes, as was the case in Guarantee Life Ins. Co. v. David-

son, Texas Com. App., 234 S.W. 883. He would still be required to perform his obligations but would be awarded an agreed compensation for his services out of payments made, subject to the right of respondent to use his compensation, if necessary, as further security for his endorsed notes. If the agreement had contemplated the performance by petitioner of a different kind of personal services — janitorial services about the bank for example — it would not have been inconsistent with petitioner's obligation as an endorser, and it can hardly be doubted that the agreement would be held enforceable and that whatever amount petitioner had in the account upon termination of the agreement could be set off against any recovery on the notes. There is no essential distinction between that agreement and the one in issue here.

The Court of Civil Appeals cited a number of Texas cases in support of its holding that the collateral agreement was so inconsistent with the terms of the notes and petitioner's obligations as an endorser that the parol evidence rule precluded its enforcement. Many more are cited by petitioner. All of them cannot be analyzed. Principal reliance is on Chalk v. Daggett, Texas Com. App., 257 S.W. 228 and Robert & St. John Motor Co. v. Bumpass, Texas Civ. App., 65 S.W. 2d 399, writ dismissed. Neither of those cases is apposite.

In Chalk v. Daggett, suit was against the maker of promissory notes. He sought to defeat a recovery of any amount by proving that the notes grew out of the settlement of partnership affairs and that the parties had agreed that the notes were not to be paid until an accounting of the partnership was had and then only in such an amount as the accounting showed to be due. Quite obviously proof and enforcement of the agreement would have varied and contradicted the obligations of the maker to pay the amount stipulated in the notes on the dates stipulated. The collateral agreement was rejected for those reasons. See 257 S.W. 231. The court did not hold, nor does the opinion imply, that if an accounting had been made showing a balance due to the maker he could not have recovered the balance by counter claim and had it set off against a recovery on the notes. As a matter of fact, the court specifically recognized that non-inconsistent collateral oral agreements may be enforced by cross-action, citing Hansen v. Yturria, supra. 257 S.W. 229.

Suit was against the maker of a promissory note in Robert & St. John Motor Co. v. Bumpass. The note was secured by a mortgage on 1000 bushels of oats. By way of defense the maker

of the note sought to prove an oral agreement that if the oats sold for less than 25 cents per bushel the note was to be credited with the difference. Enforcement of the agreement would have varied the obligation of the maker to pay the full amount of the principal of the note. The collateral agreement was properly rejected.

■ Much of respondent's argument before this Court deals with deficiencies in the evidence to prove the existence of the oral agreement. Respondent had before the Court of Civil Appeals points of error asserting that the jury's answer to Special Issue Number 1 was contrary to the weight and preponderance of the evidence. The Court of Civil Appeals did not consider or pass on those points. Instead, it applied an erroneous rule of law in holding that the parol evidence rule forbade enforcement of the oral agreement, even if it existed. In that state of the record it is our practice, and in this case our duty, to remand the case to the Court of Civil Appeals for consideration of the points of error questioning the weight and preponderance of the evidence. Woods v. Townsend, 144 Texas 594, 192 S.W .2d 884. See also Some Problems of Supreme Court Review, 21 T.B.J. 75, 114, and cases cited in connection therewith in footnote 40.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court for further consideration in keeping with this opinion.

Opinion delivered October 8, 1958.

MR. JUSTICE NORVELL, joined by JUSTICE SMITH and CHIEF JUSTICE HICKMAN, dissenting.

No one will dispute that when a final version of a contract has been agreed upon, prior negotiations and even prior agreements become immaterial. And this is true whether the final agreement be oral or in writing. However, the parol evidence rule comprehends something in addition to this familiar doctrine or merger in that written evidence, because of its greater reliability, is given controlling effect in determining the terms of the contract which will be judicially enforced in those instances where there is a conflict between a written contractual provision an an alleged oral stipulation. The rule is in part based upon public policy considerations favoring the sanctity of written agreements.

This is made clear by quotations from recognized text authorities:

"The parol evidence rule is a reasonable and most salutary one, and it should be strictly adhered to. It is founded on experience and created by necessity, and it is designed to give certainty to a transaction which has been reduced to writing by protecting the parties against the doubtful veracity of interested, and uncertain memory of disinterested, witnesses. The rule is founded on the long experience that written evidence is so much more certain and accurate than that which rests in fleeting memory only, that it would be unsafe, when parties have expressed the terms of their contract in writing, to admit weaker evidence to control and vary the stronger and to show that the parties intended a different contract from that expressed in the writing signed by them. It is obvious that written instruments would soon come to be of little value if their explicit provisions could be varied, controlled, or superseded by parol evidence, and it is also plain that a different rule would greatly increase the temptations to commit perjury; the courts have expressed regret that in their anxiety to avoid possible injustice in particular cases, they have been gradually construing away a principle which has always been considered one of the greatest barriers against fraud and perjury. * * *

"While the rule does not depend on, it is analogous to, and rests on substantially the same principle, as the statute of frauds." 32 C.J.S. 787-8, Evidence, sec. 851.

"The rule then has two effects (a) where there has been an apparent written integration of the transaction, and this apparent focusing of the negotiation in one instrument was actually intended by the actor, or actors, this intention is effectuated by ignoring the previous expressions which were thus finally rejected by the parties, and (b) where there has been an apparent integration in writing, as gathered from the writing and the surrounding situation, but in fact as appears from the other expressions of the parties it was not so intended, and other agreements or dispositions were intended also to be effective, these other intentions and expressions will nevertheless be disrgarded provided they were such as in the judge's opinion would normally have been incorporated in the writing. This latter effect, which is the only part of the rule which could be drawn in question, must obviously be justifiable, if at all, as a device to stabilize and effectuate apparently complete written transactions in general by preventing the use of other expres-

sions of the parties to alter or extend their ffect, not only in those cases, by far the most numerous, when it was actually so intended, but even in the exceptional cases where the parties' intentions, despite the form of their writing, was otherwise." 2 McCormick & Ray, Texas Law of Evidence (2d Ed.) 447, sec. 1602.

The point here is a narrow one and may be stated as follows:

Does the oral agreement alleged by Hubacek contradict the written obligation evidenced by his unqualified endorsement of the notes upon which his cross action is based?

This is not a case in which promissory notes have been endorsed, handled and collected in accordance with a written contract of the parties. In such a case, we would have the problem of arriving at the ultimate integrated agreement of the parties by considering the written instruments in accordance with recognized rules of construction and evidence. Perhaps in certain instances, it would be necessary to consider parol evidence to resolve ambiguities, but this is not the same as contradicting by parol the only written record of the agreement which we have, namely, the unqualified endorsement of a promissory note.

Hubacek in effect says that he delivered to the bank a note for $100 (for example) signed by John Doe, payable to Hubacek and bearing interest at the rate of ten per cent per annum. He endorsed the note without qualification and thereby became bound to pay the same according to its tenor. Section 66, Negotiable Instruments Acts, Article 5936, sec. 66, Vernon's Texas Civ. Stats., 32 C.J.S. 788, sec. 852. Then when at the end of one year the note is paid in full, together with $10.00 in interest, Hubacek asserts that he is entitled to $2.00 of the interest so paid. Had John Doe, the maker, not paid the note on maturity, Hubacek would have owed the bank the sum of $110. He could not discharge this obligation by paying the bank $108 or; what amounts to the same thing, by paying the bank $110 and receiving $2.00 as a rebate.

The fact that more than one note was involved and the rebate was not payable until after all the notes were paid does not change the situation any more than saying that Hubacek was entitled to compensation for collecting a note which he was legally bound to pay.

In Godwin v. Kerns, 178 Va. 447, 17 S.E. 2d 410, the directors of the bank executed notes to make good an impairment of capital stock. When sued, they pleaded an oral agreement that any amounts collected upon notes which had been taken from the capital accounts by order of the bank examiners should be credited upon the directors' notes. The Supreme Court of Appeals of Virginia rejected the attempted offset, holding that:

"To allow it to be shown by parol evidence that the note was to be paid or reduced by payments made to the holder from other securities held by the holder, or to be paid or reduced in value upon the happening of any subsequent event not mentioned in the note itself, would be to alter, vary, and contradict the express terms of a written contract."

Similar holdings are found in Kelley v. Thompson, 175 Mass. 427, 56 N.E. 713; Hass v. Meyer, 118 Kans. 109, 233 Pac. 1021 and Jensen v. Siegfried, 263 N.W. 715. Cf. Chalk v. Daggett, Texas Com. App., 257 S.W. 228; Robert & St. John Motor Co. v. Bumpass, Texas Civ. App., 65 S.W. 2d 399, writ dism.

Being of the opinion that the judgment of the Court of Civil Appeals should be affirmed, I respectfully dissent from the order of reversal.

Opinion delivered October 8, 1958.

Rehearing overruled Nov. 12, 1958.