George W. GRAHAM, Appellant,

v.

J. P. HUFF et ux., Appellees.

No. 16423.

Court of Civil Appeals of Texas.

Dallas.

Nov. 6, 1964.

Rehearing Denied Dec. 4, 1964.

Sanders, Masters & Watson, Wichita Falls, for appellant.

Nance & Caston and Robert G. Bush, III, Sherman, for appellees.

DIXON, Chief Justice.

George W. Graham has appealed from an order overruling his plea of privilege, by which plea he sought to have a suit against him transferred to Wichita County, Texas, his county of residence.

The suit was filed in Grayson County by appellees J. P. Huff and wife, Bobbie Rae Huff. They seek damages in the amount of $17,257.50 and attorneys' fees of $1,000.00 for alleged breach of an oral oil pooling contract.

On October 28, 1963 appellant filed his plea of privilege.

On November 4, 1963 appellees filed their controverting plea in which they allege that venue properly lies in Grayson County under the terms of Article 1995, Vernon's Ann.Civ.St., especially Subdivisions 3, 14, and 29a of said article.

Appellees' original petition is not included in the record except that a copy of it is set out in the controverting plea. In their petition appellees name only three defendants: George W. Graham, Clyde Railsback and David Gee. The original petition fails to comply with Rule 79, Texas Rules of Civil Procedure in that it makes no reference whatever to the places of residence of the defendants. It neither states their places of residence nor that their residences are un-known. The record does not disclose the date of the filing of the original petition.

On November 14, 1963 appellees filed their amended petition in which they named as additional defendants certain persons who held royalty interests in the two tracts of land which appellees claim should have been pooled. In their amended petition appellees expressly alleged that appellant Graham and Railsback and Gee, the other two defendants named in the original petition, were residents of Wichita County, Texas. The residence of several of the newly joined defendants was stated to be Grayson County.

The allegations in appellees' petition may be summarized as follows: On June 1, 1963, June 14, 1963 and June 22, 1963 Clyde Railsback, individually and as agent for appellant Graham, conducted negotiations with appellee J. P. Huff for an oil lease on 10 acres of land owned by Huff; on June 24, 1963 a lease was executed for a cash consideration of $500.00; part of the consideration of the written lease was the oral promise of Railsback that the Huff 10 acres would be pooled with an adjacent 30 acres out of an 80-acre tract known as the Pearl Morris land and that appellees would own one-fourth of the royalty under the pooling arrangement; thereafter appellant Graham completed a producing well on the 30 acres out of the Pearl Morris tract and on July 19, 1963, appellant, through his agent, E. W. Moran, filed with the Railroad Commission a unitization report which showed that appellees had not been included in the pooling arrangement, but that the 40-acre pool had been made up of 38.48 acres of land out of the Pearl Morris tract and 1.52 acres out of land owned by the Texas & Pacific Railroad Company; by appellant's breach of his agreement to include their 10 acres in the pool, appellees had suffered damages measured as follows: during the eighteen-month discovery allowable period appellees would have received 2,081½ barrels of oil of a reasonable value of $5,411.25 and that during the next thirteen and one-half years the well would

probably produce oil of the value of $11,-846.25—making a total of damages of $17,-257.50; appellees prayed judgment for the said $17,257.50 and attorneys' fees of $1,-000.00, plus interest at six per cent; appellees also prayed for the appointment of a receiver to take possession of the well and royalties so that funds would be available for satisfaction of their damages.

## OPINION

■■ The substance of appellant's first eleven points on appeal is that Subdivision 3 of Art. 1995, V.A.C.S., taken by itself or in connection with Subdivision 29a, will not suffice to retain venue of the suit in Grayson County, Texas. We agree with appellant.

Subdivision 3 provides that if one or all of several defendants reside without the state or if their residence is unknown suit may be brought in the county in which the plaintiff resides.

It is not clear whether service of citation was obtained on appellant Graham in person or by publication. One of the attorneys for appellees testified that he prepared affidavits for citation by publication. These affidavits are not included in the record. The attorney testified that one of the affidavits was dated November 7, 1963, the other September 19, 1963. The contents of these affidavits are not shown in the record before us.

There may be some question as to whether the residence of Railsback and Gee was outside the state. Though they mailed their answer to appellees' suit from Wichita County, Texas, at the time of the trial Graham testified that their residences were in Wichita County, but that they were only temporarily in Canada for an eighteen-month period doing oil exploration work in a venture in which Graham was interested.

There is no evidence that the residence of Graham was unknown. The undisputed evidence is that he had been a resident of Wichita County for forty-one years. The evidence indicates that appellees knew where he resided. Neville Huff, brother of appellee J. P. Huff, testified in behalf of appellees. It was he who discovered that appellees had been left out of the pool. He notified appellees and immediately called appellant Graham by telephone to protest. Next day Graham came to see Huff about the matter and was informed that suit would be filed against him. The Huff family, according to the evidence, all had interests in the oil activities in question, though only J. P. Huff and his wife were plaintiffs in the present lawsuit. Appellant in times past had drilled other oil wells on leases he had obtained from the Huffs, two of which were producing wells at the time of the trial and the Huffs were receiving royalty payments on them.

Subdivision 3 does not mean that a defendant whose address is known may be denied his privilege to be sued in his home county merely because one or more other defendants may reside outside the state or their residences may be unknown. Graham v. Ozuna, Tex.Civ.App., 275 S.W.2d 735; Thomason v. Sparkman, Tex.Civ.App., 55 S.W.2d 871; United States Gas & Oil Co. v. Duffy, Tex.Civ.App., 8 S.W.2d 278, 280. Appellees have failed to show that appellant Graham resided outside the state, or that his residence was unknown.

■ Since Subdivision 3 is not applicable it follows that Subdivision 29a cannot be considered in connection with Subdivision 3. Subdivision 29a is never considered alone. Ladner v. Reliance Corp., 156 Tex. 158, 293 S.W.2d 758, 761–762. Appellant's first eleven points are sustained.

In his Points Nos. 12 to 15 inclusive appellant asserts that venue as to him may not be retained in Grayson County under the terms of Subdivision 14 of Art. 1995, V.A.C.S. Again we agree with appellant.

Subdivision 14 provides that suits for the recovery of lands or damages thereto, or to remove encumbrances upon title, or to quiet title to land or to prevent or stay

waste on lands must be brought in the county in which the land, or a part thereof, may lie. Both tracts of land which appellees claim should have been included in the pool lie in Grayson County.

Appellees were paid $500.00 to execute a written oil lease to appellant covering 10 acres of their land. They allege that during negotiations prior to and at the time of the signing of the written lease, Clyde Railsback, agent for appellant, orally promised them that their 10-acre lease would be pooled with 30 acres out of the adjacent Pearl Morris tract. They allege that this oral promise, to which they agreed, was part of the consideration for their execution of the written lease, and but for the promise they would not have executed the written lease. Therefore, argue appellees, the oral agreement comes within the terms of Subdivision 14.

Appellant takes the position that such oral promise, if it was made, violates the Statute of Frauds and under the parol evidence rule cannot be considered even for venue purposes.

■ It is well established that the parol evidence rule is a substantive rule of law, not merely a rule of evidence. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30, 32. It is also established that the Statute of Frauds does not require that the consideration in a contract for the sale of realty be expressed in writing. Garcia v. Karam, 154 Tex. 240, 276 S.W.2d 255, 257. However, the latter rule is subject to some qualifications. In Hubacek v. Ennis State Bank, supra, our Supreme Court, though it declined to apply the parol evidence rule to the particular facts of that case, did approve the test laid down in the Restatement of the Law of Contracts, Vol. 1, Sec. 240:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

■ In the case now before us there was not a separate consideration for the oral agreement. Appellees themselves say that the oral promise was a part of the consideration for the written lease.

Further, the oral agreement was not such an agreement as might naturally be made as a separate agreement by parties situated as were appellees and appellant. This is so because, if we accept appellees' present viewpoint, the effect of the oral agreement was to convey to appellees an interest in real estate, namely, an oil well lease, the Pearl Morris lease, and a royalty interest in oil produced from said lease.

The oral agreement relied on by appellees is inconsistent with and contradictory of the provisions of the written lease executed by appellees. We quote from the written lease:

"5. Lessee is hereby granted the right to pool or unitize this lease, the land covered by it or any part thereof *with any other land, lease, leases, mineral estates or parts thereof* for the production of oil, gas, or any other minerals. Units pooled for oil hereunder shall not exceed forty (40) acres plus a tolerance of ten per cent (10%) thereof, * * *. Lessee shall file written unit designations in the county in which the premises are located. *Such units may be designated either before or after the completion of the wells,* * * *." (Emphasis ours.)

It will be noted from the above quotation that appellant was given the right to pool the 10-acre lease with "any other land,

"leases," etc. Appellant was not required to pool appellees' 10 acres with 30 acres out of the Pearl Morris tract. Appellant was not even required to designate the units constituting the pool until after completion of the well. We think the oral agreement wholly fails to meet the test stated in the Restatement of the Law above quoted.

But we need not rest our decision on the Statute of Frauds or the parol evidence rule. A study of appellees' petition as a whole convinces us that appellees have not alleged a suit involving land as contemplated by Subdivision 14, Art. 1995, V.A. C.S. In our opinion they have alleged a suit for money damages for breach of contract.

The only allegation in appellees' petition which lends any support at all to appellees' present contention that this is a suit for the recovery of lands is this: "* * * the undersigned own an interest in said well or the royalties produced therefrom * * *." But nowhere in the petition do appellees ask the court to award them any title or interest in the well on the Pearl Morris tract nor do they ask that one-fourth of the royalty produced in the future from the well, whatever it may be in volume of oil or value, be allocated to them. They do not sue in trespass to try title or ask judgment for recovery of title, or to remove encumbrances, or to quiet title, or to prevent or stay waste on lands.

What they sue for is a present judgment for a definite sum of money—$17,257.50— which they allege is the probable value of future oil royalties which they would probably receive over a period of the next fifteen years if appellant had not breached his oral agreement to pool their 10 acres with the 30 acres out of the Pearl Morris tract on which the well is located. They pray for the appointment of a receiver "whereby there will be funds available for satisfaction of the Plaintiff's damages." Appellant's Points 12 to 15 inclusive are sustained.

Since the pleadings and the evidence in this case do not bring it within any of the exceptions of Article 1995, V.A.C.S. relied on by appellees the judgment is reversed and remanded to the trial court with instructions to the trial court to transfer appellees' cause of action as to appellant Graham to Wichita County, Texas, for trial.

Reversed and remanded.