WILLIAM P. TERRELL, INC., Appellant,

v.

Frank Shott MILLER, et ux., Appellees.

No. 09 84 292 CV

Court of Appeals of Texas, Beaumont.

Aug. 29, 1985.

Thomas Moses, Beaumont, for appellant.

Don Bush, Beaumont, for appellees.

### OPINION

PER CURIAM.

This appeal primarily involves issues and questions under the Deceptive Trade Practices Act (DTPA), *TEX.BUS. & COM. CODE ANN. Sec. 17.41*, et seq. (Vernon Supp.1985). The paramount problems presented are whether the builder (Appellant) agreed to allow the prospective home owners (Appellees) to acquire extensive electrical equipment "at cost" and grant to the Appellees an "[a]llowance of $1,600.00 for points". Claiming that proper, timely written notice had been given to the builder, the Appellees also pleaded for attorney's fees as well as for treble damages for actual damages in excess of $1,000.00. The Appellees pleaded for additional relief, alleging a breach of contract. They specifically prayed for additional damages in accordance with *TEX.BUS. & COM.CODE ANN., sec. 17.50(b)(1)* (Vernon Supp.1985).

Frank Miller and his wife, Deborah, were both graduated from recognized universities. Frank had majored in health and physical education, with a second major in history. He was employed by an independent school district, acting as an athletic coach and teaching academic subjects. Deborah graduated from Lamar University, majoring in special education. She was employed by another independent school district in an adjoining county. Since their marriage they had been living in a 14' × 60' trailer. They desired a home. They qualified under the Beaumont Municipal Bond program which afforded them lower interest rates. The Millers sold their mobile home.

The Millers entered into an agreement, in writing, with William P. Terrell, Inc., acting through its President, William P. Terrell. The corporation agreed to build them a home, located in Woodland Meadows, with the purchase price being $44,670.00, with a cash down payment of $2,270.00 being made by the Millers. The improvements were set out in a "description of materials form and bid sheet" for the residence. The agreement contained a number of provisions and paragraphs. Inter alia, it had the two following Special Conditions:

"Purchaser to be responsible for title policy [.]

"Allowance of $1,600.00 for points [.]"

The written agreement, on a "Standard Sale Contract" printed form, is dated May 18, 1982. In the record, also, was a letter, bearing the letterhead of "William P. Terrell, Inc.", dated May 18, 1982, accepted by the Millers and signed by William P. Terrell, which stipulated "Allowance for points 1,600.00". The real dispute over the credit for the electrical material was the interpretation of the "at cost" price. A fair reading of the evidence convinces us that the builder agreed with the Millers that the Millers could purchase the electrical supplies "at cost". But the builder had a different concept of that cost than did the Millers. On this point the evidence was somewhat conflicting but the jury found for the Appellees.

The Appellant argues that the Appellees are not consumers under the Deceptive Trade Practices—Consumer Protection Act because the "allowance or payment of $1,600.00 for points" involves money and money is not goods or a service as those terms are used in the DTPA. Appellant argues that *Sec. 17.45* of the Deceptive Trade Practices Act defines a consumer as an individual who seeks or acquires by purchase or lease any goods or services for use. Appellant further contends that the Appellees are not consumers and cannot be consumers in respect to Appellant's failure to pay the $1,600.00 at the closing. In Appellant's brief we find:

"... Appellant's contention regarding the $1,600.00 rests on the provision that the Appellees did not seek or acquire any goods or services as those terms are defined under the Act and by Court interpretations."

Appellant argues: "Points are money." Appellant admittedly relies, in a major sense, on *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980) and *First State Bank, Morton v. Chesshir*, 613 S.W.2d 61 (Tex.Civ.App.—Amarillo 1981), reversed on other grounds, 620 S.W.2d 101 (Tex.1981) —a subsequent Court of Appeals decision is found at 634 S.W.2d 742 (Tex.App.— Amarillo 1982, writ ref. n.r.e.). We find that the agreement, with its letter attachment, of May 18, 1982, between the parties is glaringly different and meaningly distinguishable from *Riverside Nat. Bank, supra,* and *First State Bank, Morton, supra.* In *Riverside, supra,* at 173, we find:

"... Lewis sought only to borrow money in an effort to avoid repossession of his car. He sought to pay for the use of money over a period of time."

In *First State Bank, Morton, supra,* we find, at page 62:

"... Simplistically, the Chesshirs sought only money to be paid in the future as evidenced by the time certificate of deposit."

Our transaction involves the detailed descriptions of materials and the construction of a residence to be used as the home of the Millers. They do live, or did live, at the time of the trial, in the home as their homestead. They were using it as consumers. There were other provisions to the agreement for the construction of a three-bedroom, two-bath home with a double carport, with brick on two sides, having a living area of 1,404 square feet and a garage and storage area of 504 square feet. The transaction and agreement also involved electrical fixture allowances; plumbing and white fixture allowances; two mirrors allowances; carpet allowance; vinyl allowance; GE heat pump, 2½ ton; vaulted ceiling in den and the allowance for points of $1,600.00 by the Appellant.

■ The agreement and transaction between the parties was much more than merely borrowing money. It was not merely an effort to stave off the repossession of an automobile or the purchase of a time certificate of deposit. We find that the Millers were consumers of the home and that they actually used the home. Neither *Riverside, supra,* nor *First State Bank, Morton, supra,* is controlling.

The May 18, 1982, agreement referred to "electrical fixture allowance". As a contemplated part of this agreement, although later acquired, we find there were over 105 various types of electrical equipment and materials purchased through Spindletop Electrical Distributing Co., Inc. The Millers undoubtedly were consumers as to these electrical supplies. We quote from *Knight v. Intern. Harvester Credit Corp.*, 627 S.W.2d 382 (Tex.1982), at page 388:

"A 'consumer' is defined in sec. 17.45(4) of the Act as 'an individual, partnership, corporation, or governmental entity who seeks, or acquires by purchase or lease, any goods or services.' 'Goods' are defined as 'tangible chattels or real property purchased or leased for use.' Sec. 17.45(1). 'Services' include 'work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.' Sec. 17.45(2). These goods or services acquired by the consumer must form the basis of the DTPA complaint."

We also quote from *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705 (Tex.1983), at page 707:

"A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d [535] at 539 [ (Tex.1981) ]."

We overrule Appellant's first point of error.

■ Next, the Appellant urges that by the admitting of parol evidence, error was committed. Appellees' Exhibits 1 and 2, in evidence, contain the basic terms of the agreement. P–1 is a Standard Sale Contract. P–2 is a letter setting out, in detail, certain specific allowances and provisions in connection with the construction of the new home. P–1 and P–2 specifically contain the "[a]llowance of $1,600.00 for points". We find that P–1 and P–2 did not include an entire written memorial or written integrated instrument containing all of the prior negotiations of the parties. The Appellees had a separate and distinct understanding and agreement with William Terrell that the homeowners would be allowed to do the electrical work and also a good deal of the painting on the house and that the builder would furnish to them the electrical materials "at his cost". The issue on cost was the interpretation that the parties placed on the definition and elements of that cost. It was not seriously contested that the homeowners did have the right to procure the electrical materials at Terrell's cost.

Before closing, the lending institution required the Millers to prepay $1,596.00 in points. At the closing, it became obvious that there would be a dispute between the builder and the purchasers and that the builder would not allow or would not pay the $1,600.00 "in points". After the closing the Millers discovered they had been actually charged—they contended—in excess of the retail price of the electrical materials that the builder had agreed to provide to them at cost.

The separate, distinct agreement between the parties was basically that the Millers would do the electrical work, or cause it to be done, on this new house. The Millers had relatives who were skilled in electrical work and the Appellees, with this help, installed the electrical materials. This separate agreement was carried out after May 18, 1982. This performance of the electrical work and installation of the electrical materials after that date clearly and lucidly demonstrate that the parol evidence rule was not violated. Because of the chronology of events and the performance on behalf of the Appellees, the parol evidence rule was not violated. *See Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 (1958).

■ We think the *Hubacek, supra*, case is very well-reasoned and sound. That case holds, 317 S.W.2d at page 32:

"On the other hand, the rule does not preclude enforcement of prior or contemporaneous agreements which are collateral to an integrated agreement and which are not inconsistent with and do not vary or contradict the express or implied terms or obligations thereof. [Authorities omitted]"

Under this record, we find that there was not an integrated agreement covering the entirety of the transactions. We also find that the furnishing of the electrical equipment at cost was a separate, distinct agreement and contract collateral to the written instruments of May 18, 1982. Even so, the court in *Hubacek, supra*, at page 33, approves the rule stated in the Restatement of the Law of Contracts, Vol. 1, sec. 240 (1932):

" '(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

" '(a) is made for separate consideration, or

" '(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.' "

This record, viewed as an entirety, shows an agreement that would naturally be made as a separate agreement by the parties situated as were the Appellant and Appellees. We overrule Point of Error No. Two.

We have carefully considered the next two Points of Error. No. 3 complains of the admission of Plaintiff's Exhibits P–1 and P–2. No. 4 argues the sales contract was unenforceable under the Statute of Frauds. *TEX.BUS. & COM.CODE ANN., sec. 26.01* (Vernon 1968 and Vernon Supp. 1985). We find no merit in these points of error.

■ We have carefully reviewed the Standard Sale Contract and attached letter of May 18, 1982. The real property involved is specifically described as Lot 1, Block 2, Woodland Meadows, metes and bounds attached. It is true that the metes and bounds were not attached, but at the closing the deed referred to:

"Lot One (1), Block Two (2), WOODLAND MEADOWS, SECTION ONE (1), and [sic] Addition to the City of Beaumont, Jefferson County, Texas, according to the map or plat of record in Vol. 14, Page 105, Map Records in the office of the County Clerk of said County and State".

Any defect in the description was cured by the deed of October 28, 1982, at which time neither William P. Terrell, Inc., nor William P. Terrell, individually or as its president, made any complaint. We specifically find that the Standard Sale Contract, P–1, and Exhibit P–2 do not violate *sec. 26.01* of the Texas Business and Commerce Act, neither as to its *subsection (a)* nor its *subsection (b)(4)*. We overrule Points of Error Nos. Three and Four.

■ Next, Appellant urges that Special Issue No. 3 should not have been submitted because breach of contract, without more, is not a violation of *TEX.BUS. & COM. CODE ANN. sec. 17.46* of the Deceptive Trade Practices-Consumer Protection Act. Special Issue No. 3 asked the jury if William P. Terrell, Inc., agreed to pay $1,600.00 on the points at closing but refused to do so. This issue was raised by the pleadings of the Appellees and by the testimony and exhibits in the case, especially P–1 and P–2. We find that Special Issue No. 3 was properly submitted under *sec. 17.46(b)(12)*, reading:

"[R]epresenting that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

Finding no merit, we overrule Point of Error No. Five.

By similar reasoning, we overrule Point of Error No. Six, which advances and argues that the trial court erred in submitting the same Special Issue No. 3 "for the reason that there were no pleadings to support submission of the issue to the jury." We have reviewed the trial pleadings, which was the original petition of the Appellees, and hold the pleadings adequate.

■ Appellant also argues that the trial court erred in failing to allow Appellant to offer evidence relating to the closing because the court felt that the Appellant had failed to plead an affirmative defense. The thrust of this point is that the Appellant wanted to offer evidence showing that there was evidence of accord, satisfaction and ratification. *TEX.R.CIV.P. 94* was the basis of the trial court's ruling. Appellant concedes in his brief that accord and satisfaction would not have been an issue. In this connection, it is true that Appellant filed certain special exceptions but the record shows no final or definite ruling was obtained. We find, under *Rule 94*, that accord and satisfaction must be affirmatively pleaded when pleading to any preceding pleading. *Rule 94* also provides, in pertinent part:

"... and any other matter constituting an avoidance or affirmative defense."

Under this record, we find that ratification was in the nature of an affirmative defense. We find no error—certainly no re-

versible error in the trial court's ruling. Further, there was no Bill of Exception preserved in this case for appellate review. Hence, we do not have the benefit, on appeal, of what the Appellant would have proffered. No reversible error is shown on Point of Error No. Seven; it is disallowed.

Nextly, the Appellant advances that it was error to submit Special Issue No. 6 because there were no pleadings and no evidence to support same. Further, the issue did not give the jury the opportunity to answer whether or not the Appellant agreed to provide the materials at his cost and, lastly, that there was *no evidence* before the court that the Appellant did not provide the electrical materials at his cost. Although the Appellees' pleadings are not written to the degree of perfection; nevertheless, we find that they are adequate for this issue. It must be remembered that the complaint is a "no evidence" point on Issue No. 6. Having reviewed the entire record under the proper appellate criteria, we overrule the "no evidence" contentions.

It is regrettable that we do not have an actual, final, and definitive ruling by way of a written order on the special exceptions. We find none in the record. William P. Terrell, Inc., went to trial on a general denial and a pleading to the effect that the Appellees' action was "groundless and brought in bad faith, or in the alternative, was brought for the purpose of harassment." And, lastly, it pleaded the "claim is barred by the Statute of Frauds, Texas Business and Commerce Code, Article 26.01." In view of Appellant's trial pleadings and in view of the fact that the Appellees pleaded:

"In connection with this transaction, there were various express representations made to plaintiffs by defendant regarding credit or reimbursement that defendant agreed to give plaintiffs for electrical work that plaintiffs would perform on this house and regarding the closing costs";

we find Appellees' pleadings adequate.

The Appellant further objected to Special Issue No. 6 because, it argued, the jury did not have the opportunity to truthfully answer whether William P. Terrell sold the materials at his cost; the submission allowed the jury to answer whether a markup was added; there was no definition of a markup. Hence, the jurors were allowed to speculate.

We do not find in the objections to the court's charge a tendered definition of a "markup". It was the affirmative duty of the Appellant to prepare, tender and request any desired appropriate definitions and instructions in "substantially correct" language. *TEX.R.CIV.P. 279* requires that a party who desires either an explanatory instruction or a definition must tender the same in a substantially correct form. In the state of this record, we overrule Point of Error No. 8.

 The last point of error complains of the submission of Special Issue No. 11, regarding additional damages. The Millers alleged that the Appellant's conduct in regard to this transaction was committed knowingly and they also pleaded for an award of not more than three times the amount of the actual damages in excess of $1,000.00. In their prayer they sought damages in accordance with the provisions of *TEX.BUS. & COM.CODE ANN. sec. 17.50(b)(1)* (Vernon Supp.1985). This section is entitled "Relief for Consumers". As we read the record, the main thrust of the objections to Special Issue No. 11 was that there were no pleadings to support the submission of the same. That is overruled. There is a further objection that there is no evidence to support the finding of the jury thereof. It is now well-settled that, under a no evidence point, we, as an intermediate appellate court, must consider only the evidence in the record favorable to the jury's answer and we must further indulge in all reasonable inferences supporting the jury's answer. We have to go one step further and disregard all evidence and reasonable inferences therefrom that are unfavorable to, or non-supportive of, the jury's answer to this special issue. These rules of appellate review on "no evidence" points are now well established. *Garza v. Alviar,*

395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler, 1966, writ ref'd n.r. e.); Robert W. Calvert " 'No Evidence' and 'Insufficient Evidence' Points of Error", *38 Texas L.Rev. 361* (1960); Garwood "The Question of Insufficient Evidence on Appeal", *30 Texas L.Rev. 803* (1952).

We overrule the Appellant's Point of Error No. 9 and affirm the judgment below.

AFFIRMED.