■ ANCHOR SAVINGS BANK, FSB, Appellant, v REPUBLICBANK DALLAS, NATIONAL ASSOCIATION, Respondent.—In an action to recover damages for breach of an oral contract, the plaintiff appeals from an order of the Supreme Court, Nassau County

(Brucia, J.), entered March 8, 1988, which granted the defendant's motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

The plaintiff Anchor Savings Bank, FSB (hereinafter Anchor), seeks to recover money due under an alleged oral agreement between itself and the defendant Republicbank Dallas, National Association (hereinafter RBD). Anchor maintains that the oral agreement was entered into during a period of negotiations for a revised line of credit. The negotiations commenced sometime in September 1983 and culminated in a written agreement for a $25,000,000 line of credit, dated December 12, 1983, and effective December 28, 1983. At the time negotiations commenced between the parties, a prior agreement for a $10,000,000 line of credit at a preferred interest rate existed between Suburban Coastal Corporation (hereinafter Suburban) and RBD. Suburban had merged with Anchor on September 1, 1983, and the agreement between Suburban and RBD for a $10,000,000 line of credit expired on October 14, 1983.

According to Anchor, during the negotiations for a revised line of credit, RBD orally agreed to retroactively apply the benefits of any new written agreement to the merger date of September 1, 1983, based upon the balances Anchor maintained in demand deposit accounts at RBD during the interim. Only in this manner would Anchor purportedly be compensated for "lost opportunity cost", during the months when no written agreement was in place. The terms of the alleged oral agreement provided that interest charges would be brought down to zero and/or Anchor would be permitted to borrow moneys at a preferred interest rate in excess of the limits permitted under the contemplated written agreement dated December 12, 1983. Thus, Anchor alleged that the "lost opportunity cost" compensation would be calculated based upon the formula embodied in the December 12, 1983, written agreement, but actual payment would be retroactive, either through increased borrowing and/or a reduction of charges which RBD would permit Anchor to make in the future.

The parties' written agreement of December 12, 1983, which provided for a revised $25,000,000 line of credit, was comprised of three documents: (1) a letter of credit agreement, (2) a note, and (3) an interest computation letter. The letter of credit agreement contained a clause indicating that the documents embodied the entire agreement of the parties and that

all prior agreements were superseded. None of the documents made reference to retroactive compensation for "lost opportunity cost".

Thereafter, between January and March 1984, RBD paid Anchor $171,690.40 in "lost opportunity cost". However, RBD calculated this figure based upon the application of the terms of the prior, expired agreement between Suburban and RBD to the interim period, instead of applying the terms of the written agreement between Anchor and RBD dated December 12, 1983.

The parties agree that Texas law applies to this case. We find that the Supreme Court properly determined that the parol evidence rule barred admission of evidence of the oral agreement under Texas law. The merger clause and the comprehensiveness of the documents comprising the written agreement dated December 12, 1983, unequivocally reflect that the parties intended a completely integrated agreement *(see, Ragland v Curtis Mathes Sales Co.,* 446 SW2d 577, 578-579 [Tex]; *Bradford v Brady,* 413 SW2d 780, 781-782 [Tex]).

Under Texas law neither the parol evidence rule nor the existence of an integrated agreement will preclude enforcement of prior or contemporaneous agreements which are collateral to, but are not inconsistent with and do not vary or contradict, the express or implied terms or obligations of the written agreement *(see, Lakeway Co. v Leon Howard, Inc.,* 578 SW2d 163, 166 [Tex]; *Hubacek v Ennis State Bank,* 159 Tex 166, 317 SW2d 30, 33; Restatement of Contracts § 240; *see also,* Restatement [Second] of Contracts § 216). However, retroactive application of the terms of the written agreement dated December 12, 1983, would be completely inconsistent with its effective date of December 28, 1983, and any collateral agreement concerning retroactive compensation of "lost opportunity cost" by permitting excess borrowing and/or a reduction of the interest charges to zero, is plainly inconsistent with, and varies, the obligations set forth in the line of credit agreement dated December 12, 1983 *(cf., Hubacek v Ennis State Bank, supra).*

Finally, the fact that Anchor maintained its deposits at RBD, and continued to negotiate for the written agreement dated December 12, 1983, during an interim period when no written contract was in place, fails to rise to the level of separate consideration which would support a collateral contract *(cf., Hubacek v Ennis State Bank, supra).* Nor does the fact that RBD compensated Anchor for the "lost opportunity

cost" in accordance with the prior agreement between Suburban and RBD constitute partial performance of RBD's alleged promise to provide retroactive compensation in accordance with, and beyond, the terms of the written agreement dated December 12, 1983 *(cf., Sun Oil Co. [Del.] v Madeley,* 626 SW2d 726, 732-734 [Tex]).

In light of our determination, we need not reach the parties' remaining contentions. Mollen, P. J., Bracken, Rubin and Sullivan, JJ., concur.