CV4-333 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00333-CV







Lake Buchanan Investment Group; Sam Oatman; Marie Inks; Ralph R. Upchurch, Jr.;
Stanley Keese; and Charles S. Parker, Appellants


v.


Georgetown Development Company, Inc., Appellee






FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT


NO. 10,061, HONORABLE D. V. HAMMOND, JUDGE PRESIDING







PER CURIAM


 The Lake Buchanan Investment Group (the Group) appeals from a summary
judgment in favor of Georgetown Development Company (Georgetown) in Georgetown's suit to
collect a post-foreclosure deficiency owed on a promissory note. The Group executed the note
which the individual appellants guaranteed. (1) We will affirm the trial court's judgment.



Background


 On July 15, 1985, Sam Oatman and Charles S. Parker, acting on behalf of the
Group, executed and delivered a promissory note in the original principal amount of $295,200.00,
payable to United Bank of Texas and secured by real property in Llano County. As additional
security, various individuals executed guaranties.

 After the Group executed the note, United Bank of Texas was declared insolvent
and the Federal Deposit Insurance Corporation appointed as its liquidator. In August of 1987,
FDIC assigned and transferred the note and its related loan documents to Continental National
Bank, which twice renewed and extended the note and lien. In March of 1993, Continental Bank
sued the Group and the guarantors because the note was in default at maturity. That suit
eventually was dismissed.

 Also in March of 1993, Wade Todd, Georgetown's president, began negotiating
with Continental to purchase the note. After purchasing the note on June 2, 1993, Georgetown
informed the Group that it had acquired the note and would post for foreclosure the property
securing the note. A series of actions related to the foreclosure occurred, eventually culminating
in the sale of the property, and Georgetown's motion for summary judgment to collect the
deficiency remaining after sale. In response to Georgetown's motion for summary judgment, the
Group amended its answer to include allegations of fraud as well as alleging fraud in its response
to Georgetown's motion for summary judgment.



The "Stipulation and Agreement"


 In its first point of error, the Group contends that the court erred in granting
Georgetown's motion for summary judgment because the Group raised a fact issue on the
affirmative defense of fraud. We disagree.

 As the movant for summary judgment, Georgetown had the burden to establish that
no genuine issue of material fact existed and that it was entitled to summary judgment as a matter
of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548
(Tex. 1985); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). To
establish its entitlement to summary judgment on the note, Georgetown had to establish: (1) the
note in question; (2) that the Group executed and delivered the note; (3) that Georgetown is the
legal owner and holder of the note; and (4) that a certain balance was due and owing on the note. 
Rea v. Sunbelt Sav., FSB, Dallas, 822 S.W.2d 370, 372 (Tex. App.--Dallas 1992, no writ); Clark
v. Dedina, 658 S.W.2d 293, 295 (Tex. App.--Houston [1st Dist.] 1983, writ dism'd).

 As part of its summary judgment evidence, Georgetown introduced a "Stipulation
and Agreement," signed on October 6, 1993. The recitals in the agreement establish the necessary
elements to show Georgetown's entitlement to collect on the note itself and to foreclose on the
property. The agreement also specified the initial price to be paid by Georgetown for that
property. According to the agreement, the Group would cease its efforts to prevent Georgetown's
foreclosure of the property securing the note. In return, Georgetown agreed to abate any post-foreclosure deficiency proceedings against the Group or the individual guarantors for sixty days,
with an additional extension available upon Georgetown's receipt of an earnest money contract
on the property. The abatement was designed to allow the Group to obtain its own buyer who
would buy the property for a higher price and so reduce the deficiency owed.

 The Group does not complain that Georgetown failed to comply with this
stipulation. Instead, the Group contends that it has established an affirmative defense of common
law fraud, not to its entry into the agreement, but rather to events occurring before the agreement
was signed. The Group bases its allegation of fraud on claimed representations made in March
1993 by Wade Todd, President of Georgetown Development, at a meeting with the individual
guarantors. The Group claims that Todd said that he was negotiating with Continental to acquire
the note on behalf of Ned Snead, spouse of one of the Group's member-guarantors.

 As evidence in its response to Georgetown's motion for summary judgment, the
Group adduced the affidavit of Sam Oatman. (2) According to the Group, Todd assured it that Ned
Snead would be willing to tailor payment to individual circumstances: "Further WADE TODD
indicated that with NED SNEAD owing [sic] the note, he, NED SNEAD, would be in a better
position to consider each individual investor's financial abilities towards repayment of the note;
. . . . " The Group claimed it ceased its own negotiations with Continental because of that
representation.

 In essence, the Group seeks to contradict the terms of the "Stipulation and
Agreement" with evidence of negotiations about the note's ownership and potential post-foreclosure relief. Their attempt to do so is impermissible.

 The parol evidence rule is a rule of substantive contract law that denies efficacy to
prior or contemporaneous expressions dealing with the same subject matter encompassed in the
final written contract between the parties. Hubacek v. Ennis State Bank, 317 S.W.2d 30, 32 (Tex.
1958). The parol evidence rule does not preclude enforcement of a prior or contemporaneous
agreement if it is collateral to and consistent with the final agreement, as long as the first
agreement does not vary or contradict the terms of the final agreement. Id. To be collateral, the
prior or contemporaneous agreement must be one that the parties might naturally make separately
and would not ordinarily be expected to integrate into the written agreement. Weinacht v. Phillips
Coal Co., 673 S.W.2d 677, 680 (Tex. App.-Dallas, no writ). Prior negotiations are inadmissible
because they are deemed to merge in the final writing. McPherson v. Johnson, 436 S.W.2d 930,
932 (Tex. Civ. App.--Amarillo 1968, writ ref'd n.r.e.).

 The doctrine of "merger" acts as a corollary to the parol evidence rule in contract
cases. Merger refers to the extinguishment of one contract by its absorption into another
subsequent contract and is largely a matter of the parties' intent. Smith v. Smith, 794 S.W.2d
823, 827 (Tex. App.--Dallas 1990, no writ). Merger occurs when the same parties to a prior
agreement subsequently enter into a written integrated agreement covering the same subject
matter. Boy Scouts of Am. v. Responsive Terminal Sys., Inc., 790 S.W.2d 738, 744 (Tex.
App.--Dallas 1990, writ denied). If the terms of the second agreement are so inconsistent with
those of the first agreement that both cannot stand, the second is conclusively presumed to have
superseded the first. Smith, 794 S.W.2d at 828. Conversely, the prior agreement is not
superseded or invalidated by a subsequent integrated agreement relating to the same subject matter
if the first agreement is one that might naturally be made a separate agreement or the second
merely modifies the first in some respect. Id.

 The "Stipulation and Agreement" states that the parties were entering the agreement
"regarding the foreclosure and subsequent deficiency calculations associated with that one certain
note and deed of trust described herein." The agreement recites that it "embodies the entire
agreement between the parties hereto and supersedes all prior agreements and understandings
between the parties hereto relating to the subject matter hereof." Further it states that there are
no unwritten oral agreements between the parties; that the agreement may not be contradicted by
evidence of prior contemporaneous or subsequent oral agreements of the parties; and that the
provisions of the agreement may be amended only in writing.

 This agreement is a written integrated agreement covering the same subject matter
as the alleged March negotiations. The Group does not allege any fraud as to its entry into this
agreement. At the time of the agreement, the Group had been notified that Georgetown
Development, not Ned Snead, owned the note. The agreement spells out post-foreclosure relief. 
The March negotiations would not have been expected to be contained in a separate agreement
because they are not collateral to the subject covered in the "Stipulation and Agreement." The
Group cannot now attempt to alter the terms of this agreement. We overrule point of error one.



Fiduciary Relationship


 In point of error two, the Group argues that the trial court improperly granted
summary judgment because a material fact issue existed concerning Georgetown's breach of a
fiduciary duty owed to appellants. The Group has waived error on this issue because it was not
presented below. In a summary judgment proceeding, the non-movant must, in a written answer
or response to the motion, expressly present to the trial court those issues that would defeat the
movant's right to a summary judgment and failing to do so may not later assign them as error on
appeal. Clear Creek, 589 S.W.2d at 679.

 Further, under Texas law, a marital relationship by itself does not create an agency
relationship between spouses. Wilkinson v. Stevison, 514 S.W.2d 895, 898 (Tex. 1974); Johnson
v. Holly Farms of Texas, Inc., 731 S.W.2d 641, 646 (Tex. App.--Amarillo 1987, no writ). Sam
Oatman's affidavit states the Group's belief that the note was being purchased on behalf of Ned
Snead. The only evidence in the record concerning Ned Snead's relationship with the Group is
that he was married to one of the guarantors. There is no evidence in the record to show a
common business or pecuniary purpose in relation to the note acquisition that could show a joint
enterprise or agency between Ned Snead and Sherron Snead that could possibly create a fiduciary
duty. See Traweek v. Larking, 708 S.W.2d 942, 946 (Tex. App.--Tyler 1986, writ ref'd n.r.e.). 
We overrule the second point of error.

 We affirm the trial court's judgment.


Before Chief Justice Carroll, Justices Powers and B. A. Smith

Affirmed

Filed: May 17, 1995

Do Not Publish

1. [1]  The individual guarantors who are appellants are: Sam Oatman, Marie Inks, Ralph R.
Upchurch, Jr., Stanley Keese, and Charles S. Parker. We note that Stanley Keese is not listed
as an appellant on the briefs. His name, however, appears on the perfecting instrument as an
appellant, and we consider him such. Individual guarantors who are not appellants are: E.J.
Stein, Sherron Snead, and the Estate of Richard C. May.
2. [2]  We note that Oatman's affidavit refers to a letter of March 31, 1993, from Todd to the
individual investors, allegedly summarizing this meeting. A search of the transcript, however,
has failed to find this letter. It is referred to several times as an exhibit to the Oatman affidavit
but is not in the transcript, either at the pages cited in the briefs or elsewhere. In view of our
ultimate disposition of the cause, it is not relevant.